Jean D. BYAM, Plaintiff–Appellant,

v.

Jo Anne BARNHART, Commissioner, Social Security Administration Defendant–Appellee.

Docket No. 01–6195.

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 2002.

Decided March 31, 2003.

Amended: July 11, 2003.

Rodney F. Vieux, Johnson, VT, for Plaintiff–Appellant.

Michael P. Drescher, Assistant United States Attorney, (Peter W. Hall, United States Attorney for the District of Vermont, Carol .L. Shea, Chief of Civil Divi-

sion, on the brief), Burlington, VT, for Defendant–Appellee.

Before: WALKER, Chief Judge, CARDAMONE and STRAUB, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Plaintiff-appellant Jean Byam appeals from the judgment of the United States District Court for the District of Vermont (Jerome J. Niedermeier, *Magistrate Judge*) granting the motion for summary judgment by the defendant-appellee Commissioner of the Social Security Administration ("the Commissioner") and denying the cross-motion for summary judgment by the plaintiff-appellant Byam. The administrative law judge ("ALJ") granted Supplemental Security Income ("SSI") disability benefits dating back to June 1996, but refused to reopen three previous applications filed in 1993, 1994, and 1995 that had been denied and for which no hearing had been requested. The district court ruled that it lacked the jurisdiction to review the decision to deny Byam's request to reopen her earlier applications for SSI disability benefits, because neither did the ALJ constructively reopen the appellant's previous applications nor did the ALJ's decision not to reopen the appellant's previous applications violate due process.

We conclude that the district court erred in two respects: 1) it misapplied *Stieberger v. Apfel,* 134 F.3d 37 (2d Cir.1997), by focusing solely on whether Byam could "comprehend" notice of denial of disability benefits, and not whether she could "act upon notice," *id.* at 40; and 2) it misconstrued the administrative law judge's findings of facts in ruling that there was no violation of due process. Accordingly, we vacate the district court's grant of summary judgment and remand for further proceedings on the question of whether Byam was denied due process in her previous applications for SSI benefits.

## I. BACKGROUND

We first briefly describe the administrative scheme for SSI applications, and then turn to Byam's medical and psychiatric evaluations as they developed over the course of her four applications.

### A. Procedures for SSI Applications

The Social Security Act entitles disabled individuals to receive SSI benefits. *See* 42 U.S.C. § 1381a. The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1).

A claimant whose application has been denied may request reconsideration within sixty days of receiving the denial. 20 C.F.R. § 416.1409(a). If the claim has been denied on reconsideration, the claimant may request a hearing before an ALJ within sixty days. § 416.1433(b). Following the ALJ's decision, the claimant may request review by the Appeals Council within sixty days. § 416.1468(a). The Appeals Council renders the agency's determination final, and it is subject to judicial review within sixty days. § 416.1481. The claimant may request that her application be reopened within twelve months of notice of the initial determination for any reason, and within two years of the initial determination for good cause. § 416.1488(a)-(b). An applicant establishes "good cause" by furnishing new and material evidence; demonstrating a clerical error; or offering evidence in the administrative record that "clearly shows on its face that an error was made."

§ 416.1489(a). An application can be reopened at any time if the determination was obtained by "fraud or similar fault . . . tak[ing] into account any physical, mental, educational, or linguistic limitations [which the applicant] may have had at the time." § 416.1488(c). When a claimant has failed to request reconsideration, an ALJ hearing, Appeals Council Review, or review by a federal district court, Social Security Ruling 91–5p requires the agency to extend the deadlines for such requests if the claimant had good cause for missing the deadline, such as if "he or she lacked the mental capacity to understand the procedures for requesting review" or had "any mental or physical condition which limit[ed] the claimant's ability to do things for him/herself." Social Security Ruling ("SSR") 91–5p, 1991 WL 208067, at *2 (S.S.A. July 1, 1991); see also Stieberger, 134 F.3d at 38.

## B. Byam's Psychiatric Background and Previous Applications

Byam, who was born in 1950, has been unable to work since June 1, 1969, which she attributes to depression, headaches, and arthritis. According to her psychiatric records, Byam has been hospitalized three times after suicide attempts in 1969, 1974, and 1981.

Byam, unassisted by counsel, first applied for SSI benefits on September 13, 1993. The application included a "Mental Residual Functional Capacity Assessment" ("MRFCA") and a "Psychiatric Review Technique" by Dr. Gayle Frommelt. The MRFCA form begins by explaining, "Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an on going basis." Similarly, the Psychiatric Review Technique uses categories established by 20 C.F.R. § 416.925 and 20 C.F.R. § 404,

Subpt. P, Appendix 1, which "are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity." 20 C.F.R. § 404, Subpt. P, Appendix 1, 12.00 Mental Disorders, Introduction. Thus, these evaluations focus specifically on employment.

Dr. Frommelt noted that Byam had an affective disorder, which the regulations characterize as "a disturbance of mood, accompanied by a full or partial manic or depressive syndrome," and a personality disorder, defined as "typical of the individual's long-term functioning." 20 C.F.R. § 404, Subpt. P, Appendix 1, listings 12.04 and 12.08. Dr. Frommelt checked boxes indicating that Byam had "[i]nflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress," including "[p]ersistent disturbances of mood or affect," "[p]athological dependence [and] aggressivity," and "[i]ntense and unstable interpersonal relationships and impulsive and damaging behavior." Dr. Frommelt also checked boxes indicating that Byam was "moderately limited" in her ability to understand, remember, and carry out detailed instructions, her ability to maintain attention and concentration for extended periods, and her ability to set realistic goals or make plans on her own, in addition to other moderate work-related limitations. Dr. Clifford Rivers, in a separate psychological assessment, also noted that her mood disorder affects her concentration and attention, that she "may be becoming more dependant and coping increasingly poorly," and that she lacks judgment and "insight into many of her problems." On November 19, 1993, the Social Security Administration ("SSA") denied her 1993 application initially and denied it again upon reconsideration on April 6, 1994.

Byam's denial notice informed her of a right to a hearing, and explained that some benefits might be lost if, instead of requesting a hearing, she filed a new application. Byam did not request a hearing; and instead, again without counsel, she filed a second claim for benefits on September 29, 1994. Five days later, she reported to the Washington County Mental Health Hospital, so that she would "not act on suicidal thoughts." Byam began treatment there, although the record is unclear whether she was ever hospitalized. The staff at the hospital noted "memory loss and vagueness" and "dissociative presentation," which is a disruption in "the usually integrated functions of consciousness, memory, identity, or perception of the environment." Dr. Rafael Garcia observed depression, suicidal ruminations, impaired concentration, and social phobia. In November 1994, the hospital staff noted the same disorders, and also "PTSD [posttraumatic stress disorder] with suicidal ideation." Dr. Edward Hurley, completing Byam's MRFCA for her 1994 application, found mental conditions similar to the ones in Dr. Frommelt's 1993 evaluation: She was "moderately limited" in her ability to understand and carry out detailed instructions, but "not significantly limited" in following simple instructions; and she had "slight" restriction in daily living activities, "moderate" difficulty in social functioning, and "often" had deficiencies in concentration. The regional commissioner of the SSA denied her 1994 application on January 11, 1995, and she did not request reconsideration or a hearing.

Byam, again unaided by counsel, filed a third application on July 26, 1995. Her 1995 evaluations indicate that her depression and poor concentration continued. Dr. Hurley completed her MRFCA for the 1995 application and found some improvement over the past year, but continued to observe moderate limitations in her ability to carry out detailed instructions. The acting regional commissioner denied her 1995 application initially on September 12, 1995 and on reconsideration on November 29, 1995. As with her previous applications, she did not request a hearing. Even though at any time within a year of the denials of her 1993, 1994, and 1995 applications she could have requested that her applications be reopened, she never did so, despite the denial notices' warnings that she may lose benefits by filing a new application. 20 C.F.R. §§ 416.1487–88.

## C. Procedural History of Byam's 1996 Application

On June 21, 1996, Byam filed her fourth application. Her 1996 evaluations for this application noted clarity, coherence, and no delusions, but also suicidal ideation, depression, auditory hallucinations, and social phobia. They also mention that she suffered severe childhood physical and sexual abuse. The acting regional commissioner of the Social Security Administration again denied her application initially and on reconsideration. This time, she requested a hearing, but she submitted the request almost a month past the sixty-day request period, which she attributed to illness. The ALJ found no good cause for her untimeliness and dismissed the request.

In 1996, at about the time of her fourth application, Byam began to see Dr. Judy Nepveu for evaluation and treatment. Based upon previous evaluations and her own observations, Dr. Nepveu found that Byam suffers from "lifelong dysfunction" and is of "borderline retarded intellect," although Dr. Nepveu had not measured her IQ. Dr. Nepveu concluded that Byam suffers from PTSD probably as a result of "family violence." Two years later, in 1998, Dr. Nepveu observed that Byam's coping style is "fixed and dysfunctional—

she stonewalls. When she doesn't understand what to do, she does nothing. She'll have great difficulty following ... advice about paperwork and meetings." She also commented, "She cannot advocate for herself, even when her own survival is at stake."

On January 29, 1998, Byam's counsel wrote to the SSA Office of Hearings and Appeals, enclosing a letter from Dr. Nepveu stating that Byam has a "borderline retarded intellect" and that she is "too disabled to do what it takes to get 'disability'" benefits. After receiving this letter, the ALJ found good cause for her untimely request for a hearing, and scheduled a hearing for August 12, 1998. After missing this hearing, Byam appeared with counsel and testified at a rescheduled hearing on March 18, 1999. Byam's counsel "requested reopening of previous applications," because Byam's "mental impairments have prevented her from following through."

On April 21, 1999, the ALJ granted Byam SSI disability benefits dating back to June 21, 1996, the day she filed the fourth application. He found that she had not engaged in substantial gainful activity since 1969, that "her depression and disorders of the back ... cause significant vocationally relevant limitations" and are "severe within the meaning of the regulations[, imposing] significant restrictions in the ability to perform basic work activities," and that her impairments fit the criteria of an affective disorder under the federal regulations. 20 C.F.R. § 404, Subpt. P, Appendix 1, Section 12.04. The ALJ described her psychiatric condition as follows:

> The claimant suffers from depression. She has difficulty keeping appointments and is lethargic. She is unable to advocate for herself, even when her own survival is at stake. She is upset, cries and is angry. She has hurt herself in the past. She has no energy, sleeps poorly and has nightmares. She has difficulty concentrating. She has dysphoria [anxiety and depression], anhedonia [the inability to experience pleasure], decreased appetite, hears voices and has anxiety and feelings of rage. She also has feelings of worthlessness and dissociative symptoms. She has suicidal ideation and describes fearfulness.
>
> She suffers from post traumatic stress disorder secondary to abuse in her childhood. She is borderline retarded intellectually. Her coping style is fixed and dysfunctional. She stonewalls, when she doesn't understand what to do, she does nothing. She is unable to follow instructions or advice.

The ALJ recognized that "the claimant has suffered from depression, post traumatic stress disorder, and borderline retarded intellect," but found that her condition worsened after June 1997, and that she was disabled "beginning [on] June 21, 1996 but not prior there to [sic]."

On the question of reopening her earlier applications, the ALJ concluded that "[t]here is no medical evidence which can establish disability prior to June 21, 1996. Therefore, I find that there is no new and material evidence or error on the face of the evidence that would establish good cause for reopening" under 20 C.F.R. § 416.1488(b). However, the ALJ did not inquire whether her applications were denied as the result of "fault" (i.e., mental incapacity in Byam's case) under 20 C.F.R. § 416.1488(c), and he did not inquire whether she had any mental or physical conditions that limited her "ability to do things for [her]self," in accordance with SSR 91–5p, 1991 WL 208067, at *2.

Byam requested review of the ALJ's decision before the Appeals Council, which summarily denied her request by a final

order on March 9, 2000, rendering the agency's decision final and subject to judicial review. Within the sixty-day period for filing a civil action, she then filed suit in the District of Vermont, pursuant to 42 U.S.C. § 405(g), seeking to have the earlier applications reopened. Byam claimed first that the ALJ in 1999 constructively reopened the earlier applications by reviewing their merits. She also argued that the ALJ's decision not to reopen her previous applications denied her due process because she had been incompetent to advocate for herself and had been unrepresented by counsel, and thus, administrative notice was constitutionally deficient.

Magistrate Judge Jerome Niedermeier, sitting as the district court by consent of the parties pursuant to 28 U.S.C. § 636(c), granted the Commissioner's motion for summary judgment against Byam's claims. The district court ruled, first, that the ALJ had not constructively reopened the applications, and, second, that the denial notices were not constitutionally deficient. Despite noting that Dr. Nepveu's evaluation makes a "strong case for establishing that [Byam] was so severely disabled that she could not comprehend the administrative process," he concluded that her medical history before 1996 "falls short of establishing 'sufficient severity to impair comprehension' of the administrative process." *Byam v. Massanari*, No. 2:00–CV–149, at 16 (D.Vt. July 5, 2001) (citing *Stieberger*, 134 F.3d at 40). Byam appeals from the district court's grant of summary judgment for the Commissioner.

## II. DISCUSSION

### A. Standard of Review

■■■■ In appeals from denials of SSI benefits, we review the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.[1] *See Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002); *see also Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999) ("First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence.") (citations omitted). The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984).

### B. Jurisdiction

■■■■ As a general rule, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits. *See Califano v. Sanders*, 430 U.S. 99, 107–09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The Supreme Court explained the purpose underlying the non-reviewability of decisions not to reopen:

> [A]n interpretation that would allow a claimant judicial review simply by filing—and being denied—a petition to re-

1. In our initial opinion, we applied the summary judgment standard in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), because the ALJ had not addressed Byam's due process claim (or the related issue of fault) in any way, and thus there were no administrative findings of fact on this question. However, in light of *Stieberger*'s analysis that the ALJ could have, and should have, evaluated the substance of this type of due process claim as part of its investigation of fault, *Stieberger*, 134 F.3d at 41, our amended opinion reflects that this issue is best addressed on appeal by reviewing *de novo* whether the ALJ applied the "correct legal standard". This approach seeks to avoid any confusion between the typical summary judgment ruling and a summary judgment ruling on SSI benefits after an administrative determination.

open his claim would frustrate the congressional purpose, plainly evidenced in [42 U.S.C. § 405(g)], to impose a 60–day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice.

*Id.* at 108, 97 S.Ct. 980 (internal citations omitted). The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus is generally unreviewable even if there was a hearing in the case. *See Latona v. Schweiker,* 707 F.2d 79, 81 (2d Cir.1983). Nevertheless, federal courts may review the Commissioner's decision not to reopen a disability application in two circumstances: where the Commissioner has constructively reopened the case and where the claimant has been denied due process.

■ If the Commissioner "reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived" and thus, "the claim is . . . subject to judicial review." *Malave v. Sullivan,* 777 F.Supp. 247, 251–52 (S.D.N.Y.1991) (citing *Coup v. Heckler,* 834 F.2d 313, 317 (3d Cir.1987) and *McGowen v. Harris,* 666 F.2d 60, 65–67 (4th Cir.1981)); *see also Kasey v. Sullivan,* 3 F.3d 75, 77–78 (4th Cir.1993); *Brown v. Sullivan,* 932 F.2d 1243, 1246–47 (8th Cir.1991); *Cherry v. Heckler,* 760 F.2d 1186, 1189 (11th Cir. 1985); *Taylor for Peck v. Heckler,* 738 F.2d 1112, 1115 (10th Cir.1984). Judicial review is also permissible in "rare instances when the Secretary's denial of a petition to reopen is challenged on constitutional

grounds." *Califano,* 430 U.S. at 109, 97 S.Ct. 980; *cf. Able v. United States,* 88 F.3d 1280, 1288 (2d Cir.1996) (discussing Supreme Court precedent on judicial review of constitutional claims). Thus, in the absence of either constructive reopening or a constitutional claim, the district court lacks jurisdiction to review a decision not to reopen. *Latona,* 707 F.2d at 81.

## C. Constructive Reopening

First, Byam argues that the ALJ constructively reopened the previous applications by reviewing the evidence provided in those earlier applications and making a decision on the merits of that evidence. However, the district court held that the ALJ had not constructively reopened the previous applications, because he had not ruled on their merits but had only assessed whether there was new evidence to establish good cause to reopen them. We agree with the district court.

Byam points to language that, when read in isolation, suggests that the ALJ may have considered the merits of the earlier applications. For example, the ALJ found that "[t]here was no medical evidence which can establish Disability prior to June 21, 1996," and that "[t]he medical evidence supports a continued period of disability beginning June 21, 1996 but not prior there to [sic]."

■ However, as the district court correctly pointed out, the ALJ made these statements in the context of deciding whether Byam had demonstrated good cause for reopening her earlier applications. The ALJ followed those remarks by stating: "Therefore, I find that there is no new and material evidence or error on the face of the evidence that would establish good cause for reopening the prior decision." *Cf.* 20 C.F.R. § 416.1489. Byam makes no showing that the ALJ ruled on the merits of the earlier evidence,

and nothing in the record indicates that the ALJ's disability determination was based on anything other than evidence submitted as part of the 1996 application. His finding that Byam was disabled "beginning June 21, 1996" resulted from the fact that she filed the fourth application for SSI benefits on that date, and not from any substantive review of evidence submitted in previous applications. Of course, when presented with a request to reopen earlier applications, the Secretary must look into the facts of those applications to determine whether there is cause to reopen them. A similar inquiry would necessarily be triggered by an argument that the present claim is barred by res judicata. But in either case, such a "threshold inquiry into the nature of the evidence should not be read as a reopening of this claim on the merits." *McGowen*, 666 F.2d at 68. Otherwise these threshold inquiries would lead to frequent unwarranted judicial review, defeating Congress's choice for finality. *Califano*, 430 U.S. at 108, 97 S.Ct. 980. Here the district court considered the earlier applications for the limited purpose of deciding whether there was good cause to reopen them. This was not the sort of merits review that amounts to a constructive reopening, and we reject Byam's argument that it was.

## D. Due Process

■ There is more substance to Byam's argument that the Commissioner's refusal to reopen her claim violated due process. Relying chiefly on *Stieberger v. Apfel*, 134 F.3d 37, she argues that the notice she received of the administrative denials was constitutionally deficient because her mental impairments prevented her from pursuing her administrative remedies while she was unrepresented by counsel. Byam argues that her impaired mental state affected both her comprehension and her ability to "follow through" on review procedures.

The district court, in granting summary judgment to the Commissioner, focused on comprehension and not on ability to follow through. We find that the Commissioner and the district court both failed to apply the correct legal standard in evaluating Byam's mental capacity to pursue her benefits applications.

### 1. The Legal Standard for Deficiency of Notice

■ This appeal is similar in many respects to *Stieberger*. Stieberger, suffering from depression with suicidal ideation, schizophrenia, and anxiety, had failed to appeal the denial of her 1974 SSI application. *Id.* at 38. Two decades later, an ALJ rejected her argument that her mental impairments prevented her from pursuing the appeal and found no good cause to reopen the application. *Id.* at 38–39. She asserted a deprivation of her right to due process in federal court, on the basis that notice of the denial was constitutionally defective because of her impaired mental state. Reversing the district court's 12(b)(6) dismissal, we relied in part on our opinion in *Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir.1991), where we explained:

[A] due process claim "seems peculiarly apropos in the context of Social Security disability benefit proceedings in which, as here, the very disability that forms all or part of the basis for which the claimant seeks benefits may deprive her of the ability to understand or *act upon* notice of available administrative procedures."

*Id.* at 40 (quoting *Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir.1991) (quoting *Elchediak v. Heckler*, 750 F.2d 892, 894 (11th Cir.1985))) (emphasis added). In emphasizing a claimant's "ability ... to act upon notice of available administrative procedures," we relied upon precedents from other circuits which defined mental impair-

ment broadly in evaluating the deficiency of administrative notice. *Id.* at 40 (citing *Elchediak*, 750 F.2d at 894, and *Parker v. Califano*, 644 F.2d 1199, 1203 (6th Cir. 1981)). "[A] claimant suffering from mental illness raises a colorable constitutional claim when he asserts that his mental illness precluded him from litigating his claim because it prevented him from proceeding from one administrative level to another." *Elchediak*, 750 F.2d at 894; *see also Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir.1997) (inquiring whether claimant's "mental incapacity prevented the making of a timely request for review"); *Young v. Bowen*, 858 F.2d 951, 955 (4th Cir.1988) (inquiring whether claimant had the "mental competency ... to contest" the denial of benefits); *Parker*, 644 F.2d at 1202–03 (relying on a precedent holding that administrative time limits should be relaxed when a claimant's "mental condition prevented timely pursuit of his administrative remedies"). *Stieberger* made clear, however, that a claimant's argument that she was so impaired as to be unable to pursue administrative remedies requires more than a "generalized allegation" of confusion; it requires a "particularized allegation of mental impairment plausibly of sufficient severity to impair comprehension." *Stieberger*, 134 F.3d at 40–41.

The district court in this case interpreted *Stieberger* to hold that "notice of an adverse benefits determination to an unrepresented claimant who is unable to comprehend it because of mental impairments may be constitutionally deficient," and the court concluded that Byam's claim "falls short of establishing 'sufficient severity to impair comprehension' of the administrative process." *Byam v. Massanari*, No. 2:00–CV–149, at 13, 16 (quoting *Stieberger*, 134 F.3d at 41). However, the district court failed to make the further inquiry under *Stieberger* into whether the claimant could "act upon notice." *Stieber-*

*ger*, 134 F.3d at 40 (quoting *Canales*, 936 F.2d at 758).

**2. Interpreting the Evidence of Mental Impairment**

The district court properly recognized that Byam presented evidence of personality and affective disorders, dissociative presentation, and depression. However, in its due process inquiry, the district court relied upon evaluations that assessed Byam's mental state in the context of her employability, rather than of her ability to act upon legal notice. The district court cited Dr. Hurley's observation that Byam was "not significantly limited" in understanding and carrying out simple instructions and in similar areas, and that she was "moderately limited" in her ability to understand, remember, and carry out detailed instructions. Those observations were contained in Dr. Hurley's MRFCA as a part of Byam's 1994 application. The MRFCA evaluates mental health in the context of the "normal workday and workweek," and the Psychiatric Review Techniques completed by Dr. Frommelt and Dr. Hurley also evaluate the individual in an employment context.

■ The district court also cited the ALJ's "finding that the claimant was disabled as of June 1996." But the ALJ's decision not to reopen the earlier applications also was based on findings that focused on employability within the framework of the SSI regulations. Although the fault prong of 20 C.F.R. § 416.1488(c) empowers an ALJ to consider reopening past applications by evaluating whether a claimant was too impaired to comprehend notice, the ALJ never engaged in any factfinding or analysis in this area. The ALJ's conclusion that Byam was disabled as of June 21, 1996 reflected the date she filed her application, and not a judgment about her mental state before 1996. Indeed, the

Commissioner, in arguing that the ALJ did not constructively reopen the earlier applications, concedes that the ALJ did not review the merits of Byam's pre–1996 evidence of disability.

We think that the district court's reliance on Dr. Hurley's evaluation and on the ALJ's findings in rejecting Byam's due process claims was misguided. The question was not whether Byam could understand and act upon instructions in the context of certain jobs, but whether she was impaired in her ability to understand and pursue administrative and legal procedures. "Moderate limitations" in an employment context may be severe ones in understanding legal notice and filing requests for administrative and judicial review. Depression and social phobia might not prevent one from holding certain jobs, but they may impede one's ability to act on notice or go to a hearing. We do not think that employment assessments such as Dr. Hurley's are irrelevant to this question; indeed, they may be helpful to a fact-finder evaluating a due process claim, but they are neither sufficient nor dispositive. Dr. Hurley's findings in 1994 of moderate limitations in all four evaluation categories ("understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation") leave open questions about Byam's ability to comprehend and act upon notice in her earlier applications.

■ The district court noted that Dr. Nepveu's 1998 letter "makes a strong case for establishing that the claimant was so severely disabled that she could not comprehend the administrative process," but concluded that Dr. Nepveu's observations in 1998 had "no relevance to the claimant's state of mind from 1993 to 1996." However, we have held that while a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or "overwhelmingly compelling" non-medical evidence. *Rivera v. Sullivan,* 923 F.2d 964, 968 (2d Cir.1991); *see also Wagner v. Sec'y of Health and Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990). Dr. Nepveu's diagnosis bears retrospectively on Byam's condition at earlier times, particularly in her diagnosis of "life[-]long dysfunction," "borderline mental retardation," PTSD, and personality disorders. The earlier contemporaneous evaluations do not appear to contradict Dr. Nepveu's diagnoses, and in fact, in some of their aspects, tend to support them. We do not rule out the possibility that the plaintiff's condition may have degenerated from 1993 to 1997–98, raising a concern about the retrospective accuracy of Dr. Nepveu's evaluation. However, in other cases of degenerative conditions and speculative retrospective diagnoses, plaintiffs have won reversals of adverse decisions. *Rivera,* 923 F.2d at 968 (citing *Wagner,* 906 F.2d. at 861). We do not forecast the outcome here in concluding that plaintiff has put forth sufficient evidence to warrant consideration of her due process claim.

■ Finally, we turn to whether Byam has satisfied *Stieberger*'s requirement of a "particularized allegation of mental impairment plausibly of sufficient severity to impair comprehension," *Stieberger,* 134 F.3d at 40–41, and easily find that she has. There is record evidence of Byam's long history of depression, suicidal ideation with specific suicide attempts, and numerous evaluations around the dates of her SSI applications documenting specific mental disorders and cognitive, social, and emotional impairments. This evidence is sufficiently particularized and severe to meet *Stieberger*'s threshold allegation requirement and to answer the Commissioner's motion for summary judgment.

### E. Remedy

■ We faced a similar situation in *Stieberger*, where we reviewed the district court's 12(b)(6) dismissal of the claimant's complaint. Rather than remanding that case back to the district court for discovery and trial on the merits of the due process claim, we "conclude[d] that the expertise of the SSA should be enlisted to make an initial determination, subject to traditional judicial review to determine if an adverse decision is supported by substantial evidence." *Stieberger*, 134 F.3d at 41. Our due process inquiry as to whether a claimant's mental condition impaired comprehension of and the ability to act upon notice is closely related to the agency's "fault" inquiry under 20 C.F.R. § 416.1488(c) and its "good cause" inquiry under SSR 91–5p. In *Stieberger*, the ALJ and the Appeals Council had reviewed, under SSR 91–5p, whether the claimant had shown good cause for missing a deadline, and so we remanded to the district court for review of the SSA's determination under a substantial evidence standard. *Id.* at 38–39, 41. Here, the ALJ had engaged in no such inquiry under § 416.1488(c) or 91–5p, and thus, a remand to the SSA for a hearing and fact-finding on these questions of mental impairment is appropriate. Remanding for an agency hearing would also streamline the proceedings, because if the agency determines that it should reopen Byam's applications, it could then rule on the merits of those applications and calculate benefits, if necessary. A federal court might then be able to review both the reopening issue and the substantive merits in a single proceeding.

Both parties acknowledge that the appropriate relief generally would be a remand to the agency for a hearing on whether to reopen the past applications. However, Byam asks for a reversal and a remand to calculate benefits, which would effectively grant summary judgment in her favor that her right to due process was violated and that she is entitled to the benefits that she had applied for beginning in 1993. We decline this invitation. Under *Stieberger*, the initial determination of whether claimant's mental impairments prevented her from receiving sufficient notice lies with the SSA, and the question of her entitlement to benefits between 1993 and 1996 is not properly before us. She cites a Fourth Circuit precedent, *Young v. Bowen*, for reversing and remanding for a calculation of benefits, but in that case, the Fourth Circuit found that the Appeals Council, in reviewing the ALJ's decision, had evaluated the merits of the claimant's application and found that the claimant was entitled to benefits. 858 F.2d 951, 955–56 (4th Cir.1988). At this stage of Byam's case, the agency has considered neither the merits of the earlier applications nor the effect of mental impairments in preventing the claimant from following the administrative procedures. From our perspective, we simply are unable to conclude at this point that Byam is entitled to benefits requested in her previous applications.

In accordance with *Stieberger*, we instruct the district court to remand this case to the agency for a hearing on whether to reopen Byam's previous applications under 20 C.F.R. § 416.1488 or extend their deadlines for review under SSR 91–5p; and if any of the applications should be reopened or reviewed, the agency should determine if she is entitled to benefits and should calculate those benefits. The agency's decision whether to reopen or not may then be reviewed, if necessary, by the district court for substantial evidence. If that should occur, the agency and the district court will have addressed the substance of her due process claim, and fur-

ther *de novo* review of Byam's due process claim would not be necessary.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is VACATED, and we RE-MAND to the district court, with instructions to remand to the agency for an initial determination on whether to reopen Byam's 1993, 1994, and 1995 applications.