Argued and submitted March 3, at Lewis and Clark College of Law, Portland, Oregon, orders of Court of Appeals affirmed August 27, 2009

CRAIG THOMAS DAWSON,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A123488; SC S055770 (Control))

DENNIS GERHARDT FLETCHER,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A135814; SC S055789)
(Consolidated for Opinion)

217 P3d 1055

Bronson D. James, Chief Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioners on review. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services. With him on the brief for petitioner on review Dawson was Brandon G. Williams, Deputy Public Defender.

Greg Rios, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondents on review. With him on the briefs were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

DURHAM, J.

## DURHAM, J.

Petitioners Dawson and Fletcher seek judicial review under ORS 144.335 of orders in which the Board of Parole and Post-Prison Supervision (the board) denied their requests to reopen and reconsider earlier orders. The board moved to dismiss both petitions for judicial review on the ground that an order denying reconsideration of an earlier order is not itself a "final order" and, as such, is not subject to judicial review under ORS 144.335. *See Esperum v. Board of Parole*, 296 Or 789, 796, 681 P2d 1128 (1984) (so stating); *Mastriano v. Board of Parole*, 342 Or 684, 696, 159 P3d 1151 (2007) (reaffirming that holding of *Esperum*). The Court of Appeals agreed and entered orders of dismissal. We allowed review and consolidated the cases. On review, petitioners argue that the board "constructively reopened" the earlier final orders and, as such, its orders declining to reopen and reconsider earlier orders are themselves final orders that are subject to judicial review. We conclude that, although it is possible for the board to constructively reopen or reconsider an earlier final order, no such action occurred here. Accordingly, we affirm the orders of the Court of Appeals.

Before turning to the facts of these cases, it is necessary to discuss the statutes and rules that provide for administrative and judicial review of board orders. Oregon Administrative Rule (OAR) chapter 255, division 80, governs the board's administrative review of its own orders. OAR 255-080-0005 provides that an inmate must request administrative review "within forty-five (45) days after the mailing date on the Board's final action on the reviewed issue," and that the board will reject as untimely a request that does not comply with that time limit.[1] OAR 255-080-0012(1)

_____

[1] OAR 255-080-0005 provides, in part:

"(1) An inmate/offender may request an administrative review by sending Exhibit O, Administrative Review Request Form, to the Board concisely explaining how his or her case fits the criteria for review listed in rule 255-080-0010.

"(2) An inmate/offender must request administrative review within forty-five (45) days after the mailing date on the Board's final action on the reviewed issue. The Board will reject a request for administrative review as untimely unless:

"(a) It is physically received by the Board on or before the 45th day after the mailing date on the Board's final action on the reviewed issue; or

authorizes the board to grant a request for review if the request is consistent with criteria set forth in OAR 255-080-0010 and limitations set forth in OAR 255-080-0011.[2] Aside from that procedure, however, OAR 255-080-0012(2) also

---

"(b) It is delivered to the Board by mail in an envelope bearing a United States Postal Service (USPS) cancellation stamp dated on or before the 45th day after the mailing date on the Board's final action on the reviewed issue; or

"(c) In the case of an inmate, and in the absence of a legible USPS cancellation stamp, the inmate signed and dated the request and deposited it in the institutional mailing system in compliance with all applicable Department of Corrections rules on or before the 45th day after the mailing date on the Board's final action on the reviewed issue.

"* * * * *

"(4) If the Board or its designee determines that the request is consistent with the criteria as defined in rules 255-080-0010 and 255-080-0011, and meets the deadline requirements, the Board will resolve the matter using the procedures outlined in OAR 255-080-0012."

[2] OAR 255-080-0010 provides:

"The criteria for granting a review are:

"(1) The Board action is not supported by evidence in the record; or

"(2) Pertinent information was available at the time of the hearing which, through no fault of the offender, was not considered; or

"(3) Pertinent information was not available at the time of the hearing, e.g., information concerning convictions from other jurisdictions; or

"(4) The action of the Board is inconsistent with its rules or policies and the inconsistency is not explained; or

"(5) The action of the Board is in violation of constitutional or statutory provisions or is a misinterpretation of those provisions.

"(6) The action of the Board is outside its statutory grant of discretion."

OAR 255-080-0011 provides:

"All administrative review requests will be screened by a Board member or a Board designee who may deny further review of the following matters:

"(1) Findings of aggravation when the Board has set the prison term within or below the matrix range;

"(2) Findings of aggravation when the Board has not overridden a judicial minimum and the prison term has been set equal to the judicial minimum;

"(3) Matters which have previously been appealed and decided on the merits by either the Board or the appellate court(s);

"(4) Administrative review requests considered untimely pursuant to rule 255-080-0005;

"(5) Subject matter of a hearing or review and/or Board order other than the Board order being appealed;

"(6) Matters that will not change the parole release date or conditions or length of supervision;

"(7) Board orders that are not final;

"(8) Errors previously corrected;

provides the board with discretion to reconsider its own orders at any time:

> "The Board may open a case for reconsideration of a finding without receiving a request, without regard to time limits, and without opening all findings for review and appeal."

In other words, OAR 255-080-0012(2) authorizes the board to reopen and reconsider a finding in its own order, after the time limit for an inmate's or offender's request for administrative review of the order has expired.[3]

ORS 144.335 governs judicial review of the board's orders and provides, in part:

> "(1)  A person over whom the State Board of Parole and Post-Prison Supervision exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if:

---

"(9) Order which sustains a minimum term and the inmate/offender does not contest the crime severity rating and history risk score;

"(10) Order which denies, grants or grants in part an inmate/offender's request for a prison term reduction based upon outstanding reformation under ORS 144.122;

"(11) Order which refers an inmate/offender for psychological evaluation;

"(12) Order which postpones an inmate/offender's release date because of:

"(a) A Board finding of dangerousness under ORS 144.125(3) and OAR 255-060-0012;

"(b) An inmate/offender's refusal to submit to a psychological evaluation;

"(13) Order which postpones an inmate/offender's release date because of serious misconduct during confinement; or

"(14) Order which denies an inmate/offender's request under ORS 144.228(1) for an early parole consideration hearing.

"(15) Order which sets an initial release date under ORS 144.120, except if inmate/offender contests the crime severity rating, the history risk score or aggravating factors found by the Board under Board rules;

"(16) Order which sets a date for a parole consideration hearing under ORS 144.228;

"(17) Order which sets a release date or declines to set a release date after a parole consideration hearing under ORS 144.228."

[3] Several statutes in the Administrative Procedures Act (APA), ORS ch 183, including those pertaining to orders in contested cases, ORS 183.470, and judicial review of agency orders, ORS 183.480, have no applicability to the board. ORS 183.315(1). As a result, those parts of the APA do not bear on the authority of the board or the courts in this context.

"(a) The person is adversely affected or aggrieved by a final order of the board; and

"(b) The person has exhausted administrative review as provided by board rule.

"* * * * *

"(4) If a person described in subsection (1) of this section seeks judicial review of a final order of the board, the person shall file a petition for judicial review with the Court of Appeals within 60 days after the date the board mails the order disposing of the person's request for administrative review. The person shall serve a copy of the petition for judicial review on the board."

ORS 144.335 thus provides that orders of the board are subject to judicial review, if the order is a "final order," the petitioner is "adversely affected or aggrieved" by it, and the petitioner has "exhausted administrative review."

■ ORS 144.335 does not explain what a "final order" is for purposes of judicial review of a board decision. In *Esperum*, this court considered that question. Several inmates had requested that the board reopen and reconsider earlier orders setting their parole release dates. This court noted that, under the board's existing rules, the board could respond in one of three ways:

"(1) Deny the *request* for reconsideration;

"(2) Allow the request and grant some relief by changing the order; or

"(3) Allow the request, but deny relief."

*Id.* at 795-96 (emphasis in original). This court concluded that the latter two responses would result in a "final order," subject to judicial review under ORS 144.335(1). A denial of a request for reconsideration, however, would not result in a final order. To hold otherwise "would effectively eliminate the statutory 60-day petition requirement [under ORS 144.335(4)] because an inmate could challenge an initial order, no matter how old, by seeking administrative review and then challenge the denial." *Id.* at 796; *see also Mastriano*, 342 Or at 696 (reaffirming that holding of *Esperum*). Therefore, under *Esperum* and *Mastriano*, a board order denying

reopening and reconsideration of an earlier final order is not subject to judicial review.[4]

With the foregoing in mind, we turn to the facts of petitioner Dawson's case, which are not in dispute. In 1985, a trial court convicted Dawson of murder and imposed a life sentence. The board subsequently released Dawson on parole, but later revoked that parole.[5] Following a future disposition hearing, the board on December 10, 1996, denied Dawson rerelease on parole, finding that he could not be adequately controlled in the community. The board memorialized that ruling in Board Action Form (BAF) #13:

> "PURSUANT TO OAR 255-75-079; OAR 255-75-096 AND CITING EXHIBIT H, AGGRAVATING FACTOR(S): REPETITION OF TYPE OF CONDUCT ASSOCIATED WITH COMMITMENT OFFENSE OR PAST CONDITIONS (RETURN TO ASSAULTIVENESS, INVOLVEMENT IN SAME TYPE OF CRIMINAL ACTIVITY); REPEATED POSSESSION OF MULTIPLE WEAPONS. THE BOARD DENIES RE-RELEASE, FINDING THE INMATE CANNOT BE ADEQUATELY CONTROLLED IN THE COMMUNITY. THIS DENIAL OF RE-RELEASE RESULTS IN A TRUE LIFE SENTENCE."

On January 28, 1997, Dawson sought administrative review of BAF #13, arguing, in part, that the board had violated the state and federal *ex post facto* clauses by failing to apply rules enacted in 1985 to his review. The board rejected that argument and denied relief.

---

[4] When this court decided *Esperum* in 1984, OAR 255-40-020 provided:

" 'The Board may reopen any case for reconsideration upon formal written request of a prisoner to the chairperson or motion of a Board member * * *.' "

*Id.* at 795 (quoting the rule). Like the present OAR 255-080-0012(2), *former* OAR 255-40-020 did not place a time limitation on the board's reconsideration of an earlier order.

There is a difference between the two rules. *Former* OAR 255-40-020 expressly provided that a prisoner could make a formal written request for reconsideration. OAR 255-080-0012(2) does not; it merely states that the board may reopen and reconsider an order at any time. However, both petitioners and the board appear to assume that petitioners properly may request reopening and reconsideration of the orders at issue in the instant case. Without deciding the issue, we make the same assumption.

[5] The record before this court does not reveal the dates of Dawson's parole, or the reasons for its revocation.

In 2003, Dawson filed an administrative request for the board to reopen and reconsider BAF #13. Dawson argued that, in BAF #13, the board had violated the state and federal *ex post facto* clauses by applying administrative rules that were not in effect in 1985, when he had committed the crime that led to his incarceration. Dawson based his argument on *Himes v. Thompson*, 336 F3d 848 (9th Cir 2003), in which the Ninth Circuit held that the board had violated the federal *ex post facto* clause by applying particular administrative rules enacted in 1994 to a prisoner who had committed his crimes in 1978. In *Himes*, the petitioner, an Oregon inmate, was sentenced to a 70-year prison term for acts committed in 1978. In 1994, the board released him on parole and, less than four months later, revoked the parole. Applying rules in effect in 1994, but not in effect in 1978, the board found aggravation, denied rerelease, and scheduled the petitioner's next parole review for 2024. The Ninth Circuit determined that the *ex post facto* inquiry turned on whether the 1994 rules, as compared to the 1978 rules, "created a substantial—rather than attenuated or speculative—risk of increasing Himes' incarceration * * *." *Id.* at 856. After conducting that comparative analysis, the Ninth Circuit concluded that, in comparison to the rules in effect in 1978, the 1994 regulatory regime "significantly increased the possibility of serving a lengthy re-incarceration period." *Id.* at 859-60.

The board issued Administrative Review Response (ARR) #7, which stated, in part:

> "The board denies your request to reopen and reconsider its decision in BAF #13 for the following reasons. In *Himes*, the court addressed issues regarding the board's rules that were in effect July 19, 1978 to January 31, 1979. You committed your crime on May 30, 1985. Consequently, the *Himes* decision does not apply to your case. As a result, your request for the board to reopen and reconsider its finding in BAF #13 is denied."

The board read *Himes* to require the described comparative analysis of rule regimes for significant risk of increased punishment but only if the underlying crime occurred in 1978, like the crime in *Himes*, and thus, was subject to the identical rules examined in *Himes*. The board may have read *Himes* too narrowly—the Ninth Circuit said nothing to confine its

holding in that manner—but we need not decide that question to resolve Dawson's petition in this court.

In 2004, Dawson filed a petition for judicial review of ARR #7. The board moved to dismiss the proceeding, asserting that ARR #7 was not a final order under ORS 144.335. The Court of Appeals denied the motion to dismiss and granted Dawson leave to proceed with judicial review.[6] This court vacated the order of the Court of Appeals and remanded for reconsideration in light of *Mastriano*. On remand, the Court of Appeals determined that, under *Mastriano*, ARR #7 was not a final order and therefore was not subject to judicial review. The court then entered an order dated December 27, 2007, granting the board's motion to dismiss. Dawson seeks review of that order.

The facts of petitioner Fletcher's case also are not in dispute. A trial court convicted Fletcher of first-degree sodomy.[7] In 1998, the board released Fletcher on post-prison supervision. Prior to his release, however, the board issued an order of supervision conditions, designating Fletcher as a predatory sex offender (PSO). In 2006, Fletcher requested that the board reopen and reconsider that order, claiming, among other things, that he had not received a hearing on his PSO designation, and that the board had failed to inform him that he could request administrative review. In response, the board issued ARR #2, which stated, in part:

"The board has reviewed and fully evaluated your request. The arguments you have provided, however, do not warrant reopening and reconsidering your case. Interests of administrative efficiency and finality of board orders militate against reopening and reconsidering a final board order based on issues that could have been raised through established procedures for administrative review. You could have raised your arguments in a timely request for administrative review of the June 3, 1998, Order. * * * Therefore,

---

[6] The board also had argued that the Court of Appeals had no jurisdiction over ARR #7 because that order, by denying a request to reopen an earlier order, had not "adversely affected or aggrieved" Dawson. The Court of Appeals rejected that argument, citing *Richards v. Board of Parole*, 339 Or 176, 118 P3d 261 (2005). The board does not repeat that claim at this stage of the case, and we do not address it.

[7] Again, the record before this court is limited, and does not reveal the date or the circumstances of Fletcher's conviction.

based on the information that you have provided the board in your request, the board denies your request to reopen and reconsider its previous order."[8]

Fletcher filed a petition for judicial review of ARR #2. The board moved to dismiss the proceeding, arguing that, under *Mastriano*, ARR #2 was not a final order. Fletcher argued, in response, that ARR #2 indicated that the board had "evaluat[ed] the substance of petitioner's legal challenge for reopening," thus constructively reopening the case and denying relief. The Court of Appeals rejected that argument, stating that ARR #2 "merely explains why [the board] is declining to reopen and reconsider the matter formerly decided," and that the board's explanation did not amount to a reconsideration of the underlying PSO designation. The court granted the board's motion to dismiss in an order dated December 27, 2007, and Fletcher seeks review of that order of dismissal.

On review, the parties do not dispute whether petitioners were adversely affected or aggrieved by the orders denying reopening and reconsideration, or whether they exhausted administrative remedies prior to seeking judicial review. Instead, both Dawson and Fletcher (hereafter referred to collectively as "petitioners") argue that the orders at issue in the instant case are final orders and subject to judicial review. Petitioners assert that, when the board explained its reasons for denying their requests to reopen earlier orders, it made a "ruling on the merits." Accordingly, petitioners argue, the board did not merely deny their requests for reopening and reconsideration. Instead, the board "constructively reopened" the earlier orders—in other words, the board allowed their requests, reconsidered the earlier orders, and denied relief, resulting in orders designated as "final" under *Esperum* and *Mastriano*. *See Mastriano*, 342 Or at 690 (noting that, when the board "reexamines a prior order, even if it reaffirms the order in full," that action results in an order that is "final for purposes of judicial review").

---

[8] The board also noted, and Fletcher acknowledged, that he previously had submitted another request to reopen and reconsider his PSO designation. The board denied that request in 2005, and the Court of Appeals dismissed judicial review of that proceeding in 2006.

Petitioners advance two primary sources of legal support for their argument. First, although petitioners acknowledge that no Oregon cases recognize a doctrine of "constructive reopening," they point out several federal cases that do. As a general matter, when the Secretary of the former Department of Health, Education, and Welfare denied a petition to reopen an earlier claim for Social Security benefits, federal courts lacked jurisdiction to review that denial. *Califano v. Sanders*, 430 US 99, 107-09, 97 S Ct 980, 51 L Ed 2d 192 (1977). However, if the Secretary, in the act of denying reopening of the earlier claim, proceeded to reconsider the claim "on the merits," the court treated the claim as "having been reopened as a matter of administrative discretion," making it subject to judicial review. *Jelinek v. Heckler*, 764 F2d 507, 508 (8th Cir 1985).

Second, petitioners assert that, as a general legal principle, "it is the body of a document, not its caption, that controls" the legal effect of that document. To support that proposition, petitioners cite a series of cases that, in the main, discuss the legal import of motions filed with the court. *E.g.*, *Burden v. Copco Refrigeration, Inc.*, 339 Or 388, 393, 121 P3d 1133 (2005) (holding that when a party incorrectly captioned a document as a motion to dismiss under ORCP 21 A, that fact did not prevent a trial court from treating it as an application for a preliminary hearing under ORCP 21 C); *Welker v. TSPC*, 332 Or 306, 312, 27 P3d 1038 (2001) (noting that whether a motion will be considered as a motion for a new trial "is controlled by [the motion's] substance, not its caption"). Petitioners also cite cases in which, they contend, this court stressed the importance of examining the substance, rather than the form, of legal relations and actions. *See NW Medical Lab. v. Blue Cross and Blue Shield*, 310 Or 72, 83, 794 P2d 428 (1990) (holding that this court determines whether a joint venture has violated Oregon antitrust law by looking "at substance, not form"); *Baker v. City of Milwaukie*, 271 Or 500, 511-12, 533 P2d 772 (1975) (noting that, in order to determine whether a comprehensive city plan is "legislative and permanent in nature or administrative and temporary," this court looks "to the substance of the action rather than the mere title").

On the basis of those legal sources, petitioners propose that when the Board of Parole "reache[s] the merits" of a

claim that a petitioner advances for reopening an earlier order, the board constructively reopens that order. They contend that any resulting denial of relief is itself a final order, subject to judicial review. Petitioners assert that the board reaches the merits of a claim when it "adds to or alters the factual findings of the original decision, or adopts a legal position, argument, or conclusion not present in the original decision or contrary to the original decision."

The board responds that an order denying a request to reopen and reconsider an earlier order is not a final order "regardless of any explanation for the denial because the only legally operative portion of the order is the denial itself." Under petitioners' rule, the board insists, "[i]t is hard to imagine *what the board could say* in explaining its reasons for denying reopening and reconsideration" that would not result in constructive reopening. The board also asserts that petitioners' proposed rule of law is inconsistent with the 60-day deadline for seeking appellate review under ORS 144.335(4). Citing *Esperum* and *Mastriano*, the board insists that a doctrine of constructive reopening would "nullify the 60-day time limit that the legislature placed on seeking judicial review." *Mastriano*, 342 Or at 696. Finally, the board asserts that if the board can implicitly reopen a case by adopting a "legal conclusion," then a denial of reopening would become a "final order" under ORS 144.335(1), and "[t]herefore, a petitioner would not be required to make an administrative review request within 45 days of the denial of reconsideration."

As this court held in *Esperum* and *Mastriano*, an order denying reopening and reconsideration of an earlier order is not a final order and is not subject to judicial review. However, *Esperum* also held that, "[W]hen reconsideration of an earlier order is requested and granted, and the administrative action denies parole release date relief, such a denial of relief is subject to judicial review in the Court of Appeals * * *." *Id.* at 798. Neither party challenges those propositions. What the parties disagree on is *how* an appellate court should determine whether an order of the board is subject to review under those cases. Petitioners insist that this court should make that determination by asking whether the board has "reached the merits" of a request for reopening. The board responds that the determination begins and ends

with the tagline of the order in question.[9] At oral argument, however, the board acknowledged that this court may examine the "four corners" of the order for an "intent to undermine the tagline."

■ We decline to adopt the position that the inquiry into whether the board has reopened a prior order begins and ends with the tagline of the order or with an investigation of the board's intent. Instead, we must determine the legal effect or legal substance of an order by examining it in its entirety, not by focusing solely on one or more of its parts, such as the order's caption or a statement of disposition. That brings us to the question of what characteristics regarding the order will demonstrate that, in legal effect, the board has reopened or reconsidered a prior order and, therefore, the order is a final order and is subject to judicial review.

"Determining whether a subsequent action constitutes a reopening and a new decision requires a court to engage in an often-difficult process of characterization."

Richard J. Pierce, Jr., 2 *Administrative Law Treatise* 828 (4th ed 2002).

■ A "reconsideration" of an earlier order contemplates fresh deliberation over a factual or legal matter that the board already has considered and decided in the past. If the board alters a factual finding or legal conclusion in an earlier order, and the change is material to a party's legal rights under that order, then we would conclude that the board had reconsidered the order even if the order purports to deny reconsideration. But when the board determines, for example, that the petition for reconsideration relies on a new factual development or new legal decision that is *irrelevant* to the earlier order, and accompanies that determination with a denial of reopening or reconsideration, there is no basis for a reviewing court to conclude that the board has reopened or reconsidered the prior order, *see Mastriano*, 342 Or at 696 (explaining that no judicially reviewable final order results when the board's "denial of reconsideration [leaves] the prior final order undisturbed").

---

[9] The term "tagline" refers to the final sentence in an order or opinion that states in summary form the decision or disposition.

Several federal cases illustrate that point. Under the federal court doctrine of constructive reopening, the federal courts hold, for example, that an administrative law judge (ALJ) has reopened a claim for benefits if that judge has addressed the merits of the earlier claim. *Boock v. Shalala*, 48 F3d 348, 351 (8th Cir 1995). However, an ALJ does not reopen the earlier claim by conducting a threshold inquiry into the evidence and arguments that accompany a request for reopening. *Byam v. Barnhart*, 336 F3d 172, 181 (2d Cir 2003). Otherwise, "these threshold inquiries would lead to frequent unwarranted judicial review," defeating legislative decisions in favor of the finality of reviewable orders. *Id.*

*McGowen v. Harris*, 666 F2d 60 (4th Cir 1981), provides an extensive discussion of the distinction between constructive reopening and a mere threshold inquiry into a request for reopening. The claimant had applied for surviving child's insurance benefits as the surviving son of the decedent. The Social Security Administration denied benefits to the claimant, holding that he had failed to establish that he was the "child" of the decedent under the Social Security Act. The claimant then sought reconsideration of the denial, presenting further evidence that the decedent orally had acknowledged the claimant as his son. An ALJ stated that the claimant had presented sufficient evidence to establish that the decedent was his father, but failed to present sufficient "new and material" evidence of his dependency on the decedent to justify reopening. Accordingly, the ALJ denied reconsideration. The claimant then sought review in federal court, claiming that the ALJ had constructively reopened his earlier claim.

The Fourth Circuit responded that no reconsideration on the merits had occurred, and specifically addressed the argument that the ALJ had reopened the claim by addressing the claimant's new evidence and legal theories:

> "Of necessity when a social security claimant presents any claim that is arguably the same one earlier decided on the merits, the Secretary must in fairness look far enough into the proffered factual and legal support to determine whether it is the same claim, and if so, whether it should nevertheless be reopened as a discretionary matter. * * *

> "In fairness to the claimant, the results of this threshold inquiry may be reported as a prelude to reporting the dispositive administrative action taken. Thus, an ALJ may state in a formal decision, as here, that though the claimant had presented sufficient new evidence to establish biological parentage of the wage earner, his new evidence of dependency was not sufficiently 'new and material' to warrant reopening and that it went merely to establish the same claim for res judicata purposes. When, as here, this is followed by a specific conclusion that the claim should be denied on res judicata grounds, the threshold inquiry into the nature of the evidence should not be read as a reopening of this claim on the merits."

*Id.* at 67-68 (citation omitted).

*McGowen*, a case frequently cited by other courts addressing questions of constructive reopening, and the logic of which is persuasive to this court, does not support petitioners' somewhat circular argument that constructive reopening occurs whenever the board addresses the merits of whether to reconsider an earlier order. *Any* petition for reconsideration necessarily will place in issue the merits of whether to grant reconsideration. The board must evaluate a petitioner's evidence and arguments in favor of reopening in order to determine whether any proffered evidence and arguments do, in fact, warrant reconsideration of the earlier order. The board, if it chooses, may report those findings and conclusions to the inmate. But when the board states those findings without a reexamination of the accuracy of any part of the prior order, there is no basis for a reviewing court to conclude that anything other than a denial of reconsideration has occurred. Indeed, in *McGowen*, the ALJ made an entirely new, albeit irrelevant, finding of fact—that the claimant was, in fact, the biological child of the decedent—and the Fourth Circuit still held that such a finding did not reopen the case.[10]

---

[10] *McGowen* did suggest, however, that the Appeals Council's review of the ALJ's decision not to reopen the claim *might* have reopened the claim on the merits, based on "its stated conclusion that the Michigan intestacy law would control the question of claimant's legitimacy, hence dependency, and that it would not support his claim." The Fourth Circuit was "not prepared to say that jurisdiction to consider [that claim] would not have existed." *Id.* at 68.

We reiterate, as we did in *Esperum* and *Mastriano*, the significance of the 60-day time limit that the legislature has imposed on petitioners seeking judicial review of final orders under ORS 144.335(4). We observed in those cases that allowing judicial review of orders denying reopening and reconsideration would nullify that requirement by allowing a petitioner to seek reconsideration of an initial order, no matter how old, and then challenge the denial of reconsideration in court. *Esperum*, 296 Or at 796; *Mastriano*, 342 Or at 696. Likewise, allowing judicial review of such orders whenever the board finds any new fact or states any conclusion of law either would result in judicial review of a vast number of such orders—again, eviscerating the 60-day time limit on seeking judicial review—or induce the board to stop providing written reasons for its decision to deny reopening and reconsideration. The first outcome is contrary to legislative intent; the second results—undesirably, in our view—in the board cloaking its rationale in secrecy.

■      Applying the foregoing principles to the instant case, we hold that both petitioners have failed to demonstrate that the board constructively reopened its earlier orders. We consider Dawson's case first. Dawson asserts that the board constructively reopened its earlier order denying rerelease when it stated:

> "In *Himes*, the court addressed issues regarding the board's rules that were in effect July 19, 1978 to January 31, 1979. You committed your crime on May 30, 1985. Consequently, the *Himes* decision does not apply to your case."

Dawson argues that the board reached a "wholly novel" legal ruling about the applicability of *Himes*, and thereby reached the substantive merits of his claim for reopening. We disagree. The board made a threshold inquiry into whether the holding in *Himes*, as the board construed it, was sufficiently material to Dawson's case to justify reopening the earlier order, and decided that the holding in *Himes* was not material or relevant. That view informed the board's choice not to reopen. It did not amount to a constructive reopening. Whether the board "reaches the merits" of the arguments *in favor of reopening* is beside the point.

■ Fletcher argues that the board constructively reopened the order designating him as a PSO by stating:

> "The board has reviewed and fully evaluated your request. The arguments you have provided, however, do not warrant reopening and reconsidering your case."

Fletcher is mistaken. The board, in stating that his arguments did not "warrant reopening," did not reconsider the original PSO designation. Instead, the board weighed the arguments that Fletcher presented in favor of reopening, and found them wanting. Such a threshold determination is a necessary part of the board's consideration of a request to reopen and reconsider an earlier order, and does not itself constitute a constructive reopening or reconsideration of the prior order.

Petitioners submit one final argument: that the board's administrative rules provide guidelines for reopening and reconsideration of an earlier order and, therefore, this court and the Court of Appeals have jurisdiction to review an order denying reopening and reconsideration for consistency with those criteria and abuse of discretion. The board responds that, if an order denying reopening and reconsideration is not a final order under ORS 144.335, then this court may not review the order for abuse of discretion, because it has no jurisdiction over the order in the first place. We agree with the board, and reject petitioner's argument without further discussion.

In these cases, the board did not reopen the earlier orders, constructively or otherwise. The Court of Appeals correctly held that the board's orders denying reopening and reconsideration were not final orders for purposes of judicial review, and correctly dismissed petitioners' appeals on that basis.[11]

The orders of the Court of Appeals are affirmed.

---

[11] Our holding determines only whether petitioners are entitled to the statutory remedy of judicial review under ORS 144.335. Petitioners may have other potential remedies at their disposal, such as a petition for writ of habeus corpus or mandamus, but we do not address in this case questions concerning the availability to petitioners of those other potential remedies.