Submitted on remand from the Oregon Supreme Court November 15, 2006, affirmed June 20, 2007

# RICHARD W. CORGAIN,
*Petitioner,*

*v.*

# BOARD OF PAROLE
# AND POST-PRISON SUPERVISION,
*Respondent.*

## A118627 (Control), A119635

162 P3d 990

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Daniel M. Carroll, Deputy Public Defender, Office of Public Defense Services, for petitioner.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, for respondent.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

These consolidated cases—one of which is on remand from the Oregon Supreme Court, *see Corgain v. Board of Parole*, 196 Or App 323, 100 P3d 1144 (2004), *rem'd*, 341 Or 548, 145 P3d 1109 (2006) (*Corgain I*)—both present the same issue: When should petitioner begin serving a sentence for first-degree robbery that was ordered to be served consecutively to his life sentence for aggravated murder? For the reasons set forth below, we conclude that (1) the Board of Parole and Post-Prison Supervision (board) correctly determined that petitioner did not begin to serve his consecutive sentence at the time that the board determined that petitioner was likely to be rehabilitated within a reasonable length of time; and (2) the board subsequently properly applied ORS 144.125 (1981) in deferring petitioner's projected date of release from the service of his aggravated murder sentence. Consequently, we affirm the board's orders.

The material facts and procedural circumstances are uncontroverted. In August 1981, petitioner committed a first-degree robbery in Lane County. Several weeks later, he committed an aggravated murder in Klamath County. Petitioner was subsequently convicted of both crimes. On the murder conviction, he received a life sentence with a 20-year minimum; on the robbery conviction entered shortly thereafter, he received a 20-year indeterminate sentence, to be served consecutively to the aggravated murder sentence. Petitioner began serving his sentences in 1982.

In 1992, the board set a matrix term of 40 months for the robbery conviction, to be served consecutively to the term for the aggravated murder. In early 2002, the board held a rehabilitation hearing pursuant to ORS 163.105 (1981) and entered the order that is at issue in *Corgain I*. In that order, the board determined that petitioner was likely to be rehabilitated within a reasonable period of time, and further provided that petitioner's consecutive prison term for the first-degree robbery would begin to run on his to-be-established firm parole release date on the aggravated murder sentence. That order did not, however, establish a firm parole release date. Rather, it established a "projected release date" of

July 2002,[1] before which the board would hold an exit interview and consider the results of a current psychological evaluation.

Petitioner unsuccessfully sought administrative review, and subsequently judicial review, of the board's order. As pertinent here, petitioner argued that, when the board made the finding at the rehabilitation hearing that he was likely to be rehabilitated within a reasonable time, it was required to set a firm parole release date at that point—and, under *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), *cert den*, 534 US 1028 (2001), the consecutive sentence on the robbery conviction should have commenced as of that date. We agreed and reversed in a per curiam opinion, *citing Roy v. Palmateer*, 194 Or App 330, 95 P3d 1124 (2004). *See Corgain I.*

Meanwhile, as petitioner sought review of the board's first order, the board held another hearing pursuant to ORS 144.125 (1981), in which it considered a recent psychological evaluation of petitioner and found that petitioner suffered from a present severe emotional disturbance that constituted a danger to the health and safety of the community. *See generally* ORS 144.125 (1981). Based on that determination, the board deferred petitioner's projected parole release date on the aggravated murder sentence until 2004, and again noted that the consecutive 40-month term on the robbery would not begin to run until after the firm parole release date on the aggravated murder sentence.

Petitioner sought judicial review of that second order, and this court entered a stipulated order of abatement in that case (*Corgain II*) at the parties' request while the state sought review of this court's decisions in *Roy* and in *Corgain I*. Ultimately, the Oregon Supreme Court reversed, in *Roy v. Palmateer*, 339 Or 533, 124 P3d 603 (2005), and remanded *Corgain I* to us in light of its decision in *Roy*. We consolidated *Corgain I* (A118627) and *Corgain II* (A119635), as both involve the same core issue concerning when petitioner's consecutive sentence should begin to run.

---

[1] The order made it clear that the "projected release date" was not the date that petitioner would be released from prison, but the date on which he could be eligible to begin serving his consecutive prison sentence.

On judicial review in both *Corgain I* and *Corgain II*, petitioner assigns error to the board's determination that the consecutive sentence would not begin to run until after the firm release date on the aggravated murder term, and, in *Corgain II*, to the board's application of ORS 144.125 (1981) in these circumstances. We write only to address those assignments of error, and reject without discussion petitioner's other assignments of error.

Because the statutes in effect at the time petitioner committed his crimes are materially the same as were at issue in *Norris*, and because the facts in this case resemble the facts in *Norris*, we begin with a discussion of that case. At that time, ORS 163.105 provided, in pertinent part:

"(2)  When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (2) of ORS 163.095, the court shall order that the defendant shall be confined for a minimum of 20 years without the possibility of parole, release on work release, temporary leave or employment at a forest or work camp.

"(3)  At any time * * * after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

"* * * * *

"(4)  If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of his confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect. Otherwise the board shall deny the relief sought in the petition.

"(5)  Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of his confinement. Further petitions for a change may be filed at intervals of not less than two years thereafter."

ORS 163.105 (1977).

In *Norris*, the petitioner received two consecutive life sentences pursuant to ORS 163.095(2) (1977), each without the possibility of parole for 20 years. After serving 15 years, the petitioner petitioned for a hearing pursuant to ORS 163.105 (1977), and the board made a determination that the petitioner was likely to be rehabilitated within a reasonable time. *Norris*, 331 Or at 196-98. The board, however, nonetheless decided to sustain the judicially imposed minimum sentences of 20 years as to each crime. *Id.* at 199.

On judicial review, the petitioner contended that "in light of the Board's finding that he is capable of rehabilitation, the Board must convert the terms of his confinement to a parolable life sentence and set terms according to the matrix." *Id.* at 202. The board, on the other hand, argued that ORS 163.105(4) implicated a two-step process: first the board would determine if the petitioner was likely to be rehabilitated within a reasonable time, and if so, the board might then choose whether to override the minimum terms and set a release date according to the matrix. *Id.* at 202-03. The Oregon Supreme Court ultimately agreed in part with the petitioner, in light of the language in ORS 163.105(3) (1977) indicating that "the sole issue" at the hearing concerned rehabilitation, and ORS 163.105(5), which referred to the petitions for such hearings as petitions for "a change in the terms of [his] confinement." *Id.* at 203-04.

The analysis in *Norris* was straightforward as to that point. However, the court then went on to state:

> "If, at such a rehabilitation hearing, the prisoner proves by a preponderance of the evidence that the prisoner is likely to be rehabilitated within a reasonable period of time, then the Board must change the 'terms of * * * confinement'— that is, the sentence imposed under ORS 163.105(2) (1977) for one aggravated murder—to life with the possibility of parole or work release.

> "Applying that analysis to this case, we conclude that the Board must change the first of petitioner's life sentences to life with the possibility of parole or work release. Petitioner is entitled to have that change occur retroactively to January 26, 1994, *the date that the Board found him to be capable of rehabilitation. On that date, petitioner*

*began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder.* In 2009, 15 years from the date that he began serving that 20-year minimum term, petitioner may petition for a rehabilitation hearing, and that hearing also will be governed by ORS 163.105(3), (4), and (5) (1977). Only if the Board again finds that petitioner is capable of rehabilitation within a reasonable period of time, must the Board change petitioner's second aggravated murder sentence to life with the possibility of parole and work release. Only at that point would petitioner become eligible for parole."

331 Or at 207-08 (ellipsis in original; emphasis added). Thus, in *Norris*, the court determined that the petitioner commenced serving his consecutive sentence on the date that the board made a finding pursuant to ORS 163.105(3) (1977)— *viz.*, that the petitioner was likely to be rehabilitated within a reasonable period of time—with respect to his first sentence.

In *Roy*, the petitioner, like the petitioner in *Norris*, was sentenced for aggravated murder under ORS 163.105(2) (1983), with a judicially imposed 20-year minimum sentence.[2] After serving approximately 15 years, the petitioner sought a rehabilitation hearing pursuant to ORS 163.105(3) (1983), and the board determined that he was likely to be rehabilitated within a reasonable period of time. The board thus changed the terms of his confinement to life imprisonment with the possibility of parole and set a projected parole release date and exit interview to occur several years later, after the petitioner had served the 20-year minimum sentence. *Roy*, 194 Or App at 332. The petitioner argued, however, that under *Norris*, he was entitled to immediate parole release on the date that the board made the finding at the rehabilitation hearing that he was likely to be rehabilitated within a reasonable period of time. *Id.*

This court agreed. We noted that there was some tension between the court's result in *Norris* and the statutory language of ORS 163.105(4) indicating that a finding that an

---

[2] *Roy* concerned the 1983 versions of the relevant statutes, but those statutes did not differ in any significant way from those at issue in *Norris* and are identical to those at issue in the present case.

inmate was likely to be rehabilitated should lead to a "possibility of parole" rather than "automatic parole release." *Id.* at 339-40. Nonetheless, we concluded that we were bound by "the *Norris* court's pronouncement that, on the date that the board made its finding that the offender was capable of rehabilitation, the offender began serving his consecutive sentence." *Id.* at 342. Accordingly, we concluded that the petitioner in *Roy* was entitled to release on parole on the date that the board made its finding that he was capable of rehabilitation. *Id.*[3]

The Supreme Court reversed. After concisely setting forth the issue, including an explicit acknowledgment of the emphasized language from *Norris* quoted above, the court set forth at length the state's argument as to why this court's understanding of *Norris* was incorrect, and indicated its agreement with the state's argument. The court stated:

"On review, the state argues that the Court of Appeals erred in holding that plaintiff is entitled to immediate release on parole because neither the statute nor the case law compels that conclusion. The state points out that, under ORS 163.105(2) (1983), inmates convicted of aggravated murder must be confined for a minimum of 20 years without the possibility of parole. Although an inmate may seek a hearing regarding likelihood of rehabilitation after

[3] Judge Armstrong dissented, arguing that *Norris*'s holding should be understood only to apply to the limited circumstance where two aggravated murder sentences were being served. He explained *Norris* as follows:

"Until the board made a rehabilitation finding on the *second* aggravated murder sentence, the petitioner was not someone who was eligible for parole, which meant that he was not someone for whom the board could establish a parole release date. *See Norris*, 331 Or at 208. Because he was not such a person, there was no parole date that applied to his first sentence when the board issued its rehabilitation order, and the court appears to have assumed that no date could or would be set on that sentence until the board issued a rehabilitation order on the second sentence. *See id.; Severy v. Board of Parole*, 318 Or 172, 178-79, 864 P2d 368 (1993); ORS 144.110(2)(b)(A). Nevertheless, there had to be a date on which the petitioner could begin serving the second sentence, and the court concluded that the date on which the board issued its rehabilitation order that modified the terms of the first sentence was the appropriate date to use for that purpose."

*Roy*, 194 Or App at 347-48 (Armstrong, J., dissenting) (footnote omitted; emphasis in original).

15 years of confinement, no statute requires that the minimum period of 20 years be shortened if the board concludes that the inmate is 'likely to be rehabilitated within a reasonable period of time.' Instead, the state contends that such a finding converts the inmate's sentence to a life sentence with a minimum of 20 years and the *possibility* of parole after the minimum period of years has been served. *See* ORS 163.105(4) (1983) ('the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release'). According to the state, the pertinent statute provides only for the possibility of parole, not for immediate release, once the board finds that an inmate is capable of rehabilitation.

"Second, the state argues, *Norris* does not require plaintiff's immediate release once the board has made its finding. The state maintains that the issue in *Norris* was whether the board needed to make any findings, in addition to a finding of likely rehabilitation, before ordering the conversion of the inmate's sentence to life with the possibility of parole under ORS 163.105(4) (1977). In the state's view, *Norris* held that no additional findings were necessary, and once the board determined that the inmate was capable of rehabilitation, the board was obligated to convert his sentence to a life sentence with the possibility of parole. The court's opinion in *Norris*, according to the state, did not indicate that Norris automatically was required to be released on parole as soon as the board made a finding of likely rehabilitation. Instead, the state argues, plaintiff and the Court of Appeals seized on this court's observation in *Norris* that Norris was entitled to have his first aggravated-murder sentence retroactively changed—to life with the possibility of parole—as of the date on which the board concluded that Norris was likely to be rehabilitated. This court deemed that date to have been the date on which Norris 'began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder.' *Norris*, 331 Or at 208. That statement, the state asserts, is the source of the idea that *Norris* stands for the otherwise inexplicable proposition that any inmate convicted of aggravated murder is entitled to immediate release when the board has determined only that he is *likely* to be rehabilitated within a reasonable time. In the state's view, this court's decision to hold that Norris's second sentence started on the date of the board's finding arose

from the complexities inherent in untangling the effects of multiple convictions, not from any statutory command that the inmate was entitled to immediate release based on a finding that he was capable of rehabilitation.

"* * * * *

"We agree with the state that the Court of Appeals erred when it relied more heavily on a peculiar facet of the procedural posture in *Norris* than on the plain directive of the applicable statute. Under ORS 163.105(4) (1983), if the board finds that the inmate is capable of rehabilitation, then the board must enter an order converting 'the terms of the prisoner's confinement to life imprisonment with the possibility of parole, or work release.' The issue for the board is 'only whether the prisoner is capable of rehabilitation.' *Norris*, 331 Or at 207. This court further observed in *Norris* that the sentence would be converted to one of life imprisonment with merely the *possibility* of parole or work release. *Id*. Nothing in the statute or the opinion in *Norris* supports the view that the 'possibility' of release is the same as a requirement of 'immediate' release."

*Roy*, 339 Or at 540-43 (footnote omitted; emphasis in original).

Thus, under *Roy*, the plain language of ORS 163.105(4) (1983) dictated that a finding that a petitioner was capable of rehabilitation within a reasonable time led only to the "'possibility' of release" on parole, under circumstances in which the petitioner did not have a consecutive sentence to serve. *Id*. at 543. However, the court did not disavow its directive in *Norris* that the consecutive sentence in that case began to run on the date that the parole board made the finding that the petitioner was capable of rehabilitation within a reasonable time. Rather, the court characterized that aspect of its disposition in *Norris*—and our consequent reliance in *Roy*—as dependent on "a peculiar facet of the procedural posture in *Norris*," implicitly the "complexities inherent in untangling the effects of multiple convictions" to which the state had alluded. *Id*. at 542-43.

We must, thus, gauge the extent of *Norris*'s vitality and application after *Roy*. We understand the court in *Roy* to have, at least, limited the holding of *Norris* to its facts. Even with *Norris* so limited, however, the facts of these cases

might be said to bear more resemblance to *Norris* than to *Roy*, in that they concern when a petitioner begins to serve a consecutive sentence after the board has made a rehabilitation finding concerning an aggravated murder sentence pursuant to ORS 163.105(3) (1977).

Petitioner asserts that the answer is clear: *Roy* controls in cases in which no consecutive sentence is to be served, but *Norris* continues to control whenever there is a consecutive sentence to be served following the sentence for aggravated murder. According to petitioner, "*Roy* and *Norris* are in harmony, and both support petitioner's argument that the Board's finding of 'likely rehabilitation' in his case began the clock running on his consecutive sentence."

Conversely, the state, while acknowledging that *Roy* is distinguishable from the present case and that *Norris* has not been overruled, suggests that *Norris* has "been limited to its unique circumstances, two consecutive life sentences for aggravated murder." Thus, in the state's view, because petitioner's consecutive sentence in the present case is for a crime other than aggravated murder, *Norris* is not controlling.

With respect, neither argument is particularly persuasive or satisfying. Although both highlight circumstantial distinctions and similarities between and among these cases, *Norris*, and *Roy*, we are hard-pressed to discern why those circumstances should make a principled difference. Nonetheless, we ultimately agree with the state's suggestion that *Norris* is confined to the narrowest set of facts.

We do so for two reasons. *First,* as a practical matter, the Supreme Court has remanded *Corgain I* to us to reconsider our disposition in light of *Roy*. To be sure, there could be many reasons in any given case for a remand for reconsideration in light of intervening authority. "Reading" appellate remands can be as reliable as reading entrails. And yet, if the Oregon Supreme Court deemed *Roy* to have no application to these facts, it is difficult to understand why it would have remanded the case to us in light of that case. That is, if defendant were correct that *Roy* does not apply and *Norris* is, indeed, controlling, the Oregon Supreme Court would have had no reason to disturb our initial disposition of *Corgain I*.

*Second,* as noted, the Supreme Court in *Roy* described the circumstances in *Norris* as "peculiar," presenting "complexities" that defied straightforward resolution. 339 Or at 542. Although it is not unusual for courts to impose sentences for other crimes consecutively to a sentence for aggravated murder,[4] *Norris* was distinctive because it involved multiple aggravated murder sentences, in which the ultimate parole "release date would depend on a finding of likely rehabilitation with respect to his *second* sentence." *Roy,* 339 Or at 543 (citing *Norris,* 331 Or at 208) (emphasis in original). Here, by contrast, the length of the second sentence to be served consecutively already has been established as a term of 40 months pursuant to the matrix, and requires no additional findings by the board.

We thus conclude that, under *Roy*—and consistently with the language of ORS 163.105(4) (1981) that a finding that an inmate is likely to be rehabilitated simply means that his sentence should be "changed to life imprisonment with the *possibility* of parole"—the board correctly determined at the rehabilitation hearing that its finding did not mean that petitioner had fully served his prison term for aggravated murder and therefore began serving his consecutive sentence for robbery.

The remaining issue concerns *Corgain II,* in which the board deferred petitioner's projected parole release date on the aggravated murder sentence for two years pursuant to ORS 144.125 (1981). As explained more fully below, petitioner contends that ORS 144.125 (1981) was inapplicable in this context and that, rather than deferring the parole release date for his aggravated murder sentence, the board should have "summed" his consecutive indeterminate sentences. We conclude that the board's disposition was proper.

As an initial matter, to provide context for the following discussion, we note that the statutes discussed below existed during an era when criminal sentencing differed significantly from modern sentencing. Generally, at the time of

---

[4] *See, e.g., State v. Moon,* 203 Or App 586, 126 P3d 4, *on recons,* 207 Or App 402, 142 P3d 105, *rev den,* 342 Or 46 (2006); *State v. Wilkins,* 175 Or App 569, 29 P3d 1144, *rev den,* 333 Or 74 (2001).

petitioner's convictions, courts imposed indeterminate sentences up to a maximum number of years—and, in addition, under ORS 144.110(1) (1981), could specify a "judicial minimum" sentence to be served within that maximum. The board, in turn, established the term of incarceration that an inmate would actually serve, based on its application of a "matrix" that took into account factual aspects of the crimes and criminal history involved. When an inmate had multiple sentences to be served consecutively to each other, the board would use its matrix to establish prison terms for each conviction, ORS 144.120 (1981), and also could, in effect, modify those sentences to be concurrent rather than consecutive. The board also had the authority to override judicial minimum sentences. *See generally* ORS chapter 144 (1981).

ORS 144.125 (1981) provided, in pertinent part:

"(1)   Prior to the scheduled release of any prisoner on parole * * * the board may upon request of the Corrections Division or on its own initiative interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement. * * *

"(2)   The board shall postpone a prisoner's scheduled release date if it finds, after a hearing, that the prisoner engaged in serious misconduct during confinement. * * *

"(3)   If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date.

"(4)   Each prisoner shall furnish the board with a parole plan prior to the scheduled release of the prisoner on parole. The board shall adopt rules specifying the elements of an adequate parole plan and may defer release of the prisoner for not more than three months if it finds that the parole plan is inadequate. The Corrections Division shall assist prisoners in preparing parole plans."

As noted, petitioner argues that ORS 144.125 (1981) cannot be used, as the board did here, to defer the projected parole release date from his aggravated murder sentence.

That is so, petitioner asserts, because that statute addresses only situations in which an inmate is completing incarceration and is scheduled to be actually released on parole—and, thus, it has no application in this context, where petitioner will not be released on parole but will begin serving a consecutive sentence. Petitioner argues that what the board should have done here was to have "summed" his consecutive indeterminate sentences pursuant to the matrix rules in effect at the time of his crimes and ORS 144.785(2) (1981) (describing application of matrix in the context of consecutive sentences).[5]

The state responds that petitioner's proposal conflicts with ORS 144.110(2) (1981). That statute provided, in part:

"Notwithstanding the provisions of ORS 144.120 and 144.780:

"* * * * *

"(b) The board shall not release a prisoner on parole who has been convicted of murder defined as aggravated murder under the provisions of ORS 163.095, *except as provided in ORS 163.105*."[6]

(Emphasis added.)

Petitioner is undoubtedly correct that, in the usual circumstance, the board would apply the matrix to establish

---

[5] The board's practices of "summing" or "unsumming" prison terms are based on the principles set forth in ORS 144.785(2) (1981), that when consecutive sentences were imposed,

"the duration of the term of imprisonment shall be the sum of the terms set by the board * * * provided, however, that the duration of imprisonment may be less than the sum of the terms if the board finds * * * that consecutive sentences are not appropriate penalties for the criminal offenses involved and that the combined terms of imprisonment are not necessary to protect the community security."

In general, "summing" refers to the practice of adding the consecutive terms together, and "unsumming" refers to the board's determination that consecutive sentences are not appropriate, thus allowing those terms to run concurrently.

[6] ORS 144.120 (1981), referenced in ORS 144.110(2) (1981), provided that, within six months of an inmate's incarceration, the board generally was to hold a hearing at which it would establish prison terms and set a projected parole release date. ORS 144.780 (1981), the other referenced statute, described the considerations that the board should take into account in establishing prison terms.

prison terms for all of the inmate's sentences and thereby determine a scheduled release date pursuant to ORS 144.120 (1981), and shortly before that scheduled release date, an exit interview would be held pursuant to ORS 144.125 (1981). However, the state is also correct that, given the above-quoted provision of ORS 144.110(2)(b) (1981), aggravated murder is an exception to that usual circumstance—*i.e.*, that statute prohibits the board from following such a course of action when one of the sentences is a life sentence for aggravated murder. Thus, ORS 144.120 and ORS 144.125 (1981) cannot be applied to petitioner in the same manner as they apply to most inmates.

That, however, does not mean that ORS 144.125 (1981) cannot be applied to petitioner at all. Nothing in the terms of ORS 144.125 (1981) precludes its application to petitioner. Rather, as noted, ORS 144.125(1) (1981) dictates a procedure to be followed before "any prisoner" is released on parole or temporary leave.

Petitioner appears to acknowledge that ORS 144.125(1) (1981) eventually may be applied to him, but he asserts that it should apply only when he reaches the end of his consecutive robbery sentence and his projected parole release date is near. That certainly is the most obvious and direct application of the statute. However, that application is not exclusive. Nothing in ORS 144.125(1) (1981) purports to describe the *earliest* point at which the board can conduct the hearing; the statute simply provides that such a hearing will be conducted "[p]rior to the scheduled release of any prisoner." That open-ended language gives the board great flexibility as to when it conducts a proceeding under that statute.

We conclude that the legislature intended the board to apply ORS 144.125 (1981) in making its determination as to whether an inmate should be released from an aggravated murder sentence and begin serving a consecutive sentence. That is so both because of the statute's elastic temporal breadth and because the legislature provided no *other* manner for the board to make a determination as to when an inmate serving an aggravated murder sentence, after a finding has been made pursuant to ORS 163.105(4) that the inmate is likely to be rehabilitated within a reasonable time,

should be deemed to have completed his aggravated murder sentence and be eligible to begin serving a consecutive sentence.

In sum, the board correctly determined that petitioner did not begin to serve his consecutive sentence simply because the board determined that petitioner was likely to be rehabilitated within a reasonable length of time. Rather, the board properly applied ORS 144.125 (1981) in determining when petitioner should be released from service of his aggravated murder sentence.

Affirmed.