Submitted June 4, affirmed November 17, 2010, petitioner on review's petition for review allowed; decision of Court of Appeals vacated, and case remanded to Court of Appeals for reconsideration February 17, 2011 (349 Or 654)

### JIMMY L. WALTON,
*Petitioner,*

*v.*

### BOARD OF PAROLE
### AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A142414

243 P3d 811

Jimmy L. Walton filed the briefs *pro se*.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Petitioner, who was convicted of aggravated murder, seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision (board) in which the board determined that petitioner was likely to be rehabilitated within a reasonable period of time and set a projected parole release date of October 2, 2016. Petitioner argues that the board erred in setting a "projected" release date as opposed to a firm release date. He argues that the statute authorizing the board to set a projected release date does not apply to individuals convicted of aggravated murder. We affirm.

The relevant facts are not disputed. In 1987, petitioner was convicted of aggravated murder and other related charges. On the aggravated murder charge, the trial court imposed a sentence of life imprisonment without the possibility of parole, with a minimum of 30 years, in accordance with the law in effect at the time, ORS 163.105(1) (1985).[1]

Twenty years later, also in accordance with the law in effect at the time of the offense, the board held a rehabilitation hearing. ORS 163.105(2). After the hearing, the board determined that petitioner was likely to be rehabilitated within a reasonable period of time and set a projected release date, following the mandatory minimum of 30 years' imprisonment, of October 2, 2016. Under ORS 144.125, the board scheduled a hearing for six months before the projected release date and ordered a psychological evaluation to be done at that time.

On review, petitioner argues that the board erred by setting a projected release date rather than a firm release date. He argues that his sentence is governed by ORS 163.105, which applies "[n]otwithstanding the provisions of ORS chapter 144." According to petitioner, because the provisions of ORS 144.125 on which the board relied to set a projected release date do not apply, the board was obligated to set a firm release date.

---

[1] Unless otherwise noted, all references to the pertinent statutes are to the versions in effect in 1985, when defendant committed the charged offenses.

The board responds that, under ORS 163.105, the provisions of ORS chapter 144 are excepted only insofar as they conflict with the provisions of that statute. In this case, the board argues, because nothing in ORS 163.105 says anything about setting a release date, no such conflict arises, and the board is free to rely on ORS 144.125 to determine the process for setting a release date.

■     The parties' arguments thus require us to examine the interplay between ORS 163.105 and ORS 144.125. ORS 163.105 provides, in part:

"Notwithstanding the provisions of ORS chapter 144, ORS 421.165 and 421.450 to 421.490:

"(1)   When a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced to death or life imprisonment pursuant to ORS 163.150. If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(2)   At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

"* * * * *

"(3)   If, upon hearing all of the evidence, the board, upon a unanimous vote of all five members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise the board shall deny the relief sought in the petition."

In a nutshell, the statute requires a person convicted of aggravated murder to be sentenced either to death or to life imprisonment, with a minimum of 30 years *without* the possibility of parole. It further provides for a review hearing any time after 20 years following the imposition of the sentence to determine whether the offender is likely to be rehabilitated. If the board so concludes, the statute authorizes it to change the sentence to life imprisonment *with* the possibility of parole. The statute clearly provides that it applies "[n]otwithstanding the provisions of ORS chapter 144," among other statutes.

ORS 144.125 establishes the criteria for determining if an eligible offender is prepared for release. It provides that, "[p]rior to the scheduled release of any prisoner on parole," the board may "interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement." ORS 144.125(1). Depending on the results of the interview and the board's evaluation of any reports and the offender's record, the board may postpone the release date. ORS 144.125(2) - (3).

■　　　The question posed by petitioner's arguments in this case is whether ORS 144.125 applies to him, given the provision that ORS 163.105 applies "[n]otwithstanding the provisions of ORS chapter 144." In general, a "notwithstanding" clause functions merely to except enumerated provisions that otherwise conflict. *Engweiler v. Board of Parole*, 343 Or 536, 544, 175 P3d 408 (2007). Directly on point in that regard is our decision in *Larsen v. Board of Parole*, 231 Or App 59, 62, 219 P3d 28 (2009), *rev den*, 348 Or 13 (2010), in which we held that "[t]he 'notwithstanding' clause [of ORS 163.105] simply means that, to the extent that ORS 163.105 and ORS chapter 144 contain conflicting provisions, the former controls."

In this case, there appears to be no such conflict. ORS 163.105 merely authorizes the board to convert a sentence for aggravated murder from life imprisonment with a 30-year minimum without the possibility of parole to a sentence of life imprisonment with the possibility of parole; it says nothing about how the actual parole release date is set.

That is certainly the way that we have read ORS 163.105 in prior cases.

In *Corgain v. Board of Parole*, 213 Or App 407, 162 P3d 990 (2007), we addressed the relationship between earlier versions of the statutes, namely, ORS 163.105 (1981) and ORS 144.125 (1981). In that case, the petitioner had been convicted of robbery and aggravated murder in 1981. *Id.* at 409. He was sentenced to life imprisonment with a 20-year minimum for the aggravated murder conviction under ORS 163.105 (1981), as well as a 20-year indeterminate sentence on the robbery conviction, to be served consecutively to the sentence for aggravated murder. *Id.* Twenty years later, the board determined that the petitioner was likely to be rehabilitated and set a projected release date. *Id.* Before the projected release date, the board reviewed a psychological report and, based on that report, deferred the petitioner's release date. *Id.* at 410. He sought judicial review, arguing that, among other things, the board lacked authority to set anything but a firm release date, which would immediately trigger the commencement of his sentence on the robbery conviction. Specifically, he argued that, once the board found that he was capable of rehabilitation, it was obligated to set a firm release date, and the provisions of ORS 144.125 (1981) simply did not apply. *Id.* at 411.

We determined that ORS 163.105 (1981) described when an offender may be subject to the "possibility" of parole, but provided no actual process for determining when release should commence. *Id.* at 418, 421. We then determined that ORS 144.125 (1981) did describe a process for determining a date of release and that that statute, by its terms, applied before "any prisoner is released on parole." *Id.* at 421-22. Accordingly, we concluded that the two statutes did not conflict and that ORS 144.125 (1981) controlled the determination of when a person convicted of aggravated murder could be released. *Id.*

To similar effect is our more recent decision in *Fleming v. Board of Parole*, 225 Or App 578, 202 P3d 209, *rev allowed*, 346 Or 361 (2009). In that case, the petitioner had been convicted of aggravated murder in 1986 and sentenced

under ORS 163.105 to life imprisonment with a 30-year minimum without the possibility of parole. *Id.* at 580. Twenty-one years later, in 2007, the board held a rehabilitation hearing and determined that the petitioner was capable of rehabilitation. The board then set a projected release date of April 2016, following the completion of what the board saw as the 30-year minimum sentence required by the statute. *Id.* at 581. The petitioner sought review, arguing that, once the board determined that he was capable of rehabilitation, he was entitled to the determination of his release date under the matrix system that existed at the time of his offense. The board insisted that he was entitled to release only after the completion of the 30-year minimum sentence. *Id.* at 581-82.

We concluded that the petitioner was, in effect, half-right. We held that the petitioner was correct that, once the board determined that he was capable of rehabilitation, ORS 163.105(3) requires it to convert the sentence to life imprisonment with the possibility of parole, without any reference to a 30-year minimum, and that the petitioner became entitled to an immediate determination of a parole release date. *Id.* at 599-600. We also concluded, however, that the matrix system in effect at the time of the offense did not apply to that determination; rather—and this is the important point for the purposes of this case—the board, in determining a release date, "should resort simply to ORS 144.125." *Id.* at 600-01. We cited as authority for that conclusion our previous decision in *Corgain. Id.*

Although neither *Corgain* nor *Fleming* is precisely on point, taken together, both make the answer in this case clear. At issue in *Corgain* were earlier versions of the statutes at issue in this case. Any differences between the versions at issue in that case and the ones at issue in this case, however, do not appear to be material. In substance, the two sets of statutes and the relationship between them would seem to be the same. Accordingly, the reasoning of *Corgain* would seem to be applicable to this case as well.

And, in fact, that is precisely how we treated *Corgain* in *Fleming*. To be sure, the issue in *Fleming* was slightly different from the one at issue in this case. In

*Fleming*, the parties argued about whether the matrix system determined the petitioner's release date; no one apparently said anything about ORS 144.125. Still, in addressing the parties' arguments in *Fleming*, we held not only that the matrix does not determine an offender's release, but also that, under *Corgain*, ORS 144.125—the same version that is at issue in this case—does.

In summary, ORS 163.105(3) allows the board to determine whether petitioner may have the possibility of parole, but it does not dictate how and when the board should actually grant a petitioner release on parole. There is no requirement under ORS 163.105 that the board set a firm parole release date. Therefore, no direct conflict exists between ORS 163.105 and ORS chapter 144, making it appropriate for the board to apply provisions of ORS chapter 144 to set a projected parole release date.

Affirmed.