Submitted April 22, 2014, affirmed February 4, petition for review denied June 4, 2015 (357 Or 325)

TYRONE WASHINGTON,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A153074

344 P3d 42

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeremy C. Rice, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

Petitioner, who was convicted of aggravated murder, first-degree kidnapping, and first-degree robbery in 1987, challenges an order of the Board of Parole and Post-Prison Supervision setting his projected parole release date for July 22, 2016. Petitioner generally contends that the board erred by recalculating his prison term during a recent prison term hearing instead of adhering to various decisions that it made about his incarceration in the late 1980s and the year 2000. As we explain below, only one of the specific arguments that petitioner makes on judicial review is properly before us, and that argument does not establish that the board erred. Accordingly, we affirm.

## I. BACKGROUND

A. *The Parole-Matrix System and Sentencing for Aggravated Murder*

We begin by describing the law that was in effect in July 1986, when petitioner committed the crimes at issue. At that point, "Oregon had an indeterminate sentencing scheme * * * and used a parole matrix system for establishing the actual term of imprisonment for most felony offenders." *State ex rel Engweiler v. Felton*, 350 Or 592, 598, 260 P3d 448 (2011).

> "Under that system, a trial court imposed an indeterminate sentence of a specified duration on a defendant who had been convicted of a crime. An indeterminate sentence stated only a maximum term to be served * * *. Such a sentence did not establish the length of time that a defendant was to be incarcerated. * * * [F]or prisoners sentenced under the matrix system, the Board [of Parole], not the [sentencing] court, determine[d] the actual duration of imprisonment."

*Hamel v. Johnson*, 330 Or 180, 185-86, 998 P2d 661 (2000).

When a court imposed consecutive sentences, the board had statutory authority to determine whether the prison terms on those sentences would be served consecutively or concurrently. Under ORS 144.785(2) (1985), *amended by* Or Laws 1987, ch 634, § 3, if a court imposed consecutive sentences for multiple convictions,

"the duration of the term of imprisonment shall be the sum of the terms [for each of the convictions] set by the board *** provided, however, that the duration of imprisonment may be less than the sum of the terms if the board finds *** that consecutive sentences are not appropriate penalties for the criminal offenses involved and that the combined terms of imprisonment are not necessary to protect the community security."

The board referred to its options under that statute as "summing" or "unsumming" prison terms. "In general, 'summing' refers to the practice of adding the consecutive terms together, and 'unsumming' refers to the board's determination that consecutive sentences are not appropriate, thus allowing those terms to run concurrently." *Corgain v. Board of Parole*, 213 Or App 407, 420 n 5, 162 P3d 990 (2007); *see* OAR 255-35-022 (5/31/85) (further explaining "summing" and "unsumming").[1]

Even while the parole-matrix system described above was in effect, a specific statute provided that a person convicted of aggravated murder could be sentenced to life imprisonment with a 30-year minimum term of confinement:

"When a defendant is convicted of aggravated murder ***, the defendant shall be sentenced to death or life imprisonment ***. If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

---

[1] OAR 255-35-022 (5/31/85) provided, in part:

"(1) When consecutive sentences have been imposed, a rating and a range shall be assigned for each crime.

"(2) The Board shall consider the summed ranges as a single unified range. Any minimum sentences imposed in conjunction with consecutive terms shall be considered a single unified minimum.

"(3) In summing the ranges, the Board shall first establish the crime category, history risk score and appropriate range for the principal crime. Subordinate ranges will then be established by taking each consecutive crime and establishing the applicable crime category and base range. The unified range will be determined by adding the base range for each subordinate crime to the principal range.

"(4) The Board may, by four (4) concurring votes, choose to unsum one (1) or all of the ranges. Once unsummed, the Board will treat one or more consecutive sentences as concurrent sentences."

ORS 163.105(1) (1985).[2] Another subsection of that statute provided that a person convicted of aggravated murder could, after 20 years, request a hearing to determine whether the person was likely to be rehabilitated:

> "At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *."

ORS 163.105(2) (1985). Subsection (3) of the statute provided that, if the board made certain findings after such a "murder review hearing,"[3] including that the person convicted of aggravated murder was "capable of rehabilitation," the board would enter an order "convert[ing] the terms of the prisoner's confinement to life imprisonment *with* the possibility of parole or work release." ORS 163.105(3) (1985) (emphasis added).

For many years, the board took the position that, even if it determined at a murder review hearing that an inmate was likely to be rehabilitated, it lacked authority "to override the 30-year mandatory minimum sentence for aggravated murder," that is, "to consider releasing a prisoner on parole after [only] 20 years." *Janowski/Fleming v. Board of Parole*, 349 Or 432, 439, 446, 245 P3d 1270 (2010). The Supreme Court rejected that argument in *Janowski/Fleming*. To the contrary, the court explained, ORS 163.105 (1985) did give the board authority to consider releasing a person convicted of aggravated murder on parole once the board found, at a murder review hearing, that the person was likely to be rehabilitated within a reasonable time, even if that resulted in the person being released without having been incarcerated for the 30-year minimum term. *Id.* at 446.

---

[2] ORS 163.105 has been amended several times since 1985. Or Laws 1987, ch 158, § 23; Or Laws 1987, ch 803, § 20; Or Laws 1989, ch 720, § 1; Or Laws 1991, ch 126, § 8; Or Laws 1995, ch 421, § 2; Or Laws 1999, ch 59, § 31; Or Laws 1999, ch 782, § 5; Or Laws 2007, ch 717, § 1; Or Laws 2009, ch 660, § 6.

[3] *See Lopez v. Mills*, 249 Or App 674, 676 n 3, 278 P3d 94, *rev den*, 352 Or 665 (2012) (explaining the term "murder review hearing").

The question remained what process the board should use to determine projected parole-release dates for prisoners whom the board found "likely to be rehabilitated within a reasonable period of time." The court explained that the board's parole-matrix rules applied to those prisoners (at least, those—like the *Janowski/Fleming* petitioners—who had committed aggravated murder in 1985). *Id.* at 455-56. Because "no set [parole] release date [was] in place" for either of the *Janowski/Fleming* petitioners, the court remanded the cases to the board to "conduct a hearing * * * to set each prisoner's release date according to the matrix in effect when he committed his crime." *Id.* at 456.

As discussed in more detail below, the decision in *Janowski/Fleming* prompted the board to conduct a prison-term hearing for petitioner.[4] The order that the board issued after that hearing is the subject of petitioner's petition for judicial review.

B. *History of Petitioner's Sentencing and Board Proceedings*

We turn to the pertinent facts, which are procedural and undisputed. As noted, petitioner committed aggravated murder, first-degree kidnapping, and first-degree robbery in 1986. He was convicted and sentenced in 1987.[5] On the aggravated murder conviction, petitioner received a sentence of life imprisonment with a 30-year minimum period of incarceration under ORS 163.105(1) (1985). He received indeterminate twenty-year sentences, with mandatory ten-year minimum terms, on both the kidnapping conviction and the robbery conviction. The court ordered all three sentences to be served consecutively.

In 1988, the board applied the parole-matrix system to petitioner's crimes. First, it determined that petitioner had a criminal-history/risk score of 9 (termed "excellent"). The board also determined that the crime-severity

---

[4] Petitioner committed aggravated murder and other crimes in July 1986. The statutes and the applicable administrative rules in effect at that time were the same as those that the court addressed in *Janowski/Fleming*. Accordingly, the principles discussed in *Janowski/Fleming* control here.

[5] Petitioner was also found guilty of felony murder; that count merged with the aggravated-murder count, resulting in a single conviction for aggravated murder.

rating associated with aggravated murder was 8, resulting in a matrix range of 120 to 168 months of incarceration on the aggravated murder conviction. Both first-degree kidnapping and first-degree robbery carried a crime-severity rating of 6, resulting in a matrix range of 30 to 40 months of incarceration on each of those convictions. The board added (or "summed") those matrix ranges on the consecutive sentences, resulting in an overall matrix range of 180 to 248 months of incarceration. Nonetheless, the board did not then set a projected release date, instead noting that petitioner had a life sentence on his aggravated murder conviction.

Petitioner later obtained post-conviction relief vacating the mandatory minimum 10-year terms on his robbery and kidnapping convictions. As a result, the board conducted an administrative-review hearing in 2000 "to consider the effect of the removal of minimum terms on the robbery and kidnapping sentences." The board voted to "unsum" the prison terms on petitioner's kidnapping and robbery convictions, concluding that "the combined [consecutive] terms of imprisonment [were] not necessary to protect the community's safety and welfare" and that consecutive terms were "not appropriate penalties for the criminal offenses involved." That is, the board gave the terms of incarceration for robbery and kidnapping "concurrent rather than consecutive effect." *Strawn v. Board of Parole*, 217 Or App 542, 547, 176 P3d 426, *rev den*, 344 Or 539 (2008). The board accordingly determined that the "unsummed" matrix range for the robbery and kidnapping convictions was 30 to 40 months, and it ordered petitioner to serve one 40-month prison term on those convictions that would not begin to run until petitioner "received a firm release date on the aggravated murder sentence," which would not occur until sometime after petitioner's "murder review date [of] 11/22/2016 following 360 months." In other words, the board then contemplated that petitioner would remain incarcerated for *at least* the 30-year minimum term on his aggravated murder conviction but, once the term of incarceration associated with the sentence for that conviction was complete, would serve only another single 40-month term of incarceration for his robbery and kidnapping convictions.

Petitioner's murder review hearing occurred in 2008. The board found that he was likely to be rehabilitated within a reasonable period of time and, therefore, converted his sentence from life without the possibility of parole to life with the possibility of parole or work release, pursuant to ORS 163.105(3) (1985). At that point, the board still held the mistaken view that the 30-year minimum term of incarceration on petitioner's aggravated murder conviction remained in place. Accordingly, the board "establish[ed] a parole release date of November 22, 2016, following completion of the statutory minimum sentence." Because petitioner would then need to serve the consecutive 40-month "unsummed" term on the robbery and kidnapping convictions, the board established "a projected parole release date of March 22, 2020 following a total of 400 months."

The Supreme Court's decision in *Janowski/Fleming* issued in 2010. As explained above, the court rejected the parole board's view that it lacked authority to override statutory minimum terms of incarceration for people convicted of aggravated murder under ORS 163.105 (1985). Instead, the court held,

> "ORS 163.105 (1985) gave the board the authority to override the 30-year mandatory minimum sentence for aggravated murder, and to consider releasing a prisoner on parole after 20 years, upon a finding that the prisoner is likely to be rehabilitated within a reasonable time."

349 Or at 446. Moreover, the court held, the parole-board rules in effect in 1985 (the same rules that were in effect when petitioner committed his crimes) "include[d] rules for applying the [parole] matrix to persons convicted of aggravated murder." *Id.* at 455. Thus, the board was required to set a projected parole-release date for each person convicted of aggravated murder pursuant to "the matrix in effect when he committed his crime." *Id.* at 456.

In April 2011, the board notified petitioner that it had scheduled a prison-term hearing pursuant to *Janowski/Fleming*, to be held in September 2011. In a letter to petitioner, the board explained that the sole purpose of the hearing would be "to set a prison term"—and, thus, a projected

parole-release date—under the matrix system that was in effect at the time he committed his crimes:

> "The Board will establish the crime category rating and criminal history risk score that apply in your case, state the matrix range that results, and decide whether there are aggravating or mitigating factors. Based on that information, the Board will normally set the prison term, although the Board also has the authority under ORS 144.120(4) to choose not to set a parole date ('deny parole') at the prison term hearing. A 'prison term' is the length of time you must serve in prison before being eligible for consideration for parole. The offender then receives a *projected* parole release date. The next step in the process is usually an exit interview, where the Board will meet with you to decide whether you are safe to be released into the community on parole."

(Emphasis in original.)

After the September 2011 hearing, the board issued Board Action Form 7, memorializing its findings regarding petitioner's criminal-history/risk score and the crime-category rating for aggravated murder. Those findings resulted in a base matrix range for petitioner's aggravated murder conviction of 120 to 168 months: the same base matrix range that the board had calculated for petitioner's aggravated murder conviction in 1988. The board also determined that petitioner's robbery and kidnapping convictions each had a matrix range of 30 to 40 months. Adding those matrix ranges together, the board set a total matrix range of 180 to 248 months. The board also found an aggravating factor: extreme cruelty and "[s]ustained criminal intent over an extended period." The board then set petitioner's prison term "at the top of the matrix range of 248 months, plus—having found aggravation—[it applied] 3 standard variation(s) of 36 months, or 108 months, for a total of 356 months." Accordingly, the board set "a projected parole release date of 07/22/2016, following 356 months," and scheduled an exit interview in January 2016.

Petitioner sought administrative review of the board's decision. In his administrative-review request (ARR), he argued that the board had improperly "resummed" the matrix terms for his kidnapping and robbery convictions,

which had been "unsummed" in 2000. According to petitioner, the board had improperly relied on *Janowski/Fleming* "to establish a prison term for not only the aggravated murder but for the kidnapping 1 and robbery 1 which are already under the matrix system." Petitioner argued that *Janowski/ Fleming* allowed the board only "to apply the matrix to the **aggravated murder** once an inmate was found capable of rehabilitation \* \* \* to establish **a parole release date on the Aggravated murder.**" (Boldface and underscoring in original.)[6]

In its response to petitioner's ARR, the board stated that, pursuant to *Janowski/Fleming*, it had "replicate[d] as nearly as possible the procedures for setting a prison term [that were] in place at the time of [petitioner's] crime commitment date." The board asserted that it was "not bound" by the "unsumming" decision it had made in 2000 because the "2011 hearing was a de novo hearing to establish a prison term following the directives of the appellate courts, and supersedes the 2000 administrative review hearing." Having rejected petitioner's arguments, the board denied administrative relief.

C. *The Parties' Arguments on Judicial Review*

On review, petitioner challenges several aspects of the board's order. First, he renews his contention that the board erred when it "resummed" the matrix ranges on his kidnapping and robbery convictions, having "unsummed" those ranges in 2000. We address that argument below. In his second through fourth assignments of error, petitioner argues, essentially, that the board erred by conducting a new "de novo" prison-term hearing instead of adhering completely to the parole-matrix determinations it made in 1988; he also contends that the board did not give him sufficient notice of the scope of the 2011 hearing. Petitioner did not present those arguments to the board in his ARR. Accordingly, we reject petitioner's second, third, and fourth assignments

---

[6] Petitioner also argued in his ARR that the board erred "when it relied on circumstances and criminal history, which had already been used to determine [his] history/risk score, to justify a 108 month upward departure from [his] appropriate matrix range of 180 to 248 months to establish a prison term of 356 months." Petitioner does not renew that argument on judicial review.

of error without further discussion, as petitioner did not exhaust his administrative remedies with respect to those claims of error and the claims are not preserved for judicial review. *See* ORS 144.335(1) (a person may seek judicial review of a final parole-board order only if the person is adversely affected or aggrieved by the order and the person "has exhausted administrative review as provided by board rule"); OAR 255-080-0008(1)(d) (explaining requirements for administrative-review request, including that it include a "plain and concise statement of the points for which the offender wants review"); OAR 255-080-0005 (setting forth process for administrative review); OAR 255-080-0001 ("An inmate/offender has exhausted his or her administrative remedies after complying with OAR 255-080-0005, and after the Board denies review, or grants review and either denies or grants relief."); *Ayres v. Board of Parole*, 194 Or App 429, 441, 97 P3d 1 (2004) ("an ARR must raise and preserve with specificity all issues to be later presented on judicial review").

We return to the sole question properly before us on judicial review: whether the board erred by resumming the matrix ranges on petitioner's kidnapping and robbery convictions, having earlier unsummed those ranges in 2000. Petitioner contends that the board lacked statutory authority to take that action. In his view, "[t]he board does not have authority to re-sum a term of imprisonment once it has unsummed that term."

In response, the board asserts that it generally "has authority to reconsider a prior finding." In addition, the board points out that, when it unsummed petitioner's matrix ranges for robbery and kidnapping in 2000 after concluding that consecutive terms were not necessary to protect the public, "it did so under a mistaken assumption"—"that petitioner would serve a full 30-year minimum term before even beginning his prison terms for the kidnapping and robbery convictions." The board concludes that it had authority to reassess whether consecutive prison terms for robbery and kidnapping were appropriate once it learned that petitioner would not be required to serve the entire 30-year minimum term on his aggravated murder conviction.

## II. ANALYSIS

As explained above, the pertinent facts are undisputed and the only question before us is whether the board had statutory authority to "resum" the matrix ranges for petitioner's robbery and kidnapping convictions in 2011, having previously "unsummed" those ranges in 2000. We review that aspect of the board's order for legal error. ORS 144.335(3); ORS 183.482(8). For the reasons set forth below, we conclude that the board did not err when it "resummed" the matrix ranges for petitioner's robbery and kidnapping convictions in 2011.

First, the board is correct, as a general matter, that it has authority to reconsider its orders. OAR 255-080-0012(2) provides that the board "may open a case for reconsideration of a finding without receiving a request, without regard to time limits, and without opening all findings for review and appeal." The rule specifies that the board may use that authority for various purposes, for example, "to correct errors in the history risk score [or] crime category" rating. OAR 255-080-0012(3)(b). The Supreme Court has characterized the rule as giving the board "discretion to reconsider its own orders at any time." *Dawson/Fletcher v. Board of Parole*, 346 Or 643, 648, 217 P3d 1055 (2009); *see also Lovelace v. Board of Parole*, 168 Or App 700, 701, 7 P3d 671, *rev den*, 331 Or 193 (2000) (rejecting challenge to OAR 255-080-0012(2) in which the petitioner argued that the rule conflicted with the statutory requirement that the board issue decisions by "final" order; explaining that the petitioner had "confuse[d] 'finality' with 'immutability'"); *Beveridge v. Johnson*, 157 Or App 57, 61, 967 P2d 1238 (1998) ("Under OAR 255-080-0012(2), the board has the authority to 'open a case for reconsideration of a finding' ***.").

Petitioner does not acknowledge the board's general authority to reconsider its orders; nor does he explain why that authority would not allow the board to revisit its 2000 decision to "unsum" petitioner's matrix ranges for robbery and kidnapping. In particular, petitioner does not explain why the board lacks authority to revisit a decision—like its 2000 "unsumming" decision in this case—that the board made at a time when it was operating under a mistaken view of the relevant law.

As this court has recognized, the board may appropriately reconsider a decision regarding a parole-release date that was based on a "misapplication of the law." *Gordon v. Hill*, 189 Or App 363, 370, 76 P3d 150 (2003), *rev den*, 339 Or 280 (2004). That is essentially what happened here. As the board points out, when it decided to unsum petitioner's ranges for robbery and kidnapping in 2000, it incorrectly believed that petitioner would be incarcerated for *at least* 360 months solely on his aggravated murder conviction. That belief presumably informed the board's determination that only an additional single 40-month consecutive term on his other convictions was appropriate and that two consecutive 40-month terms were "not necessary to protect the community's safety and welfare." In other words, the board concluded in 2000 that a total of 400 months of incarceration was appropriate, and that a 440-month prison term was not necessary.

Once *Janowski/Fleming* issued, the board learned that petitioner would *not* be incarcerated for the statutory minimum 360-month term on his aggravated murder conviction. Rather, because the board already had found petitioner to be capable of rehabilitation, application of the parole-matrix system to the aggravated murder sentence would result in petitioner serving a much shorter prison term for aggravated murder. Given that changed circumstance, the board was not required to adhere to its earlier determination that consecutive prison terms on the kidnapping and robbery convictions were not necessary to protect public safety. The board could, instead, do precisely what it did here: "resum" the prison terms on the kidnapping and robbery convictions, resulting in a total prison term of 356 months, instead of some shorter term that would have resulted had the board adhered to its 2000 "unsumming" decision. Put differently, the board could determine that increasing petitioner's overall prison term through "resumming" the terms on his kidnapping and robbery convictions was appropriate to partly compensate for the dramatic reduction in the amount of time that the board had believed petitioner would serve on his aggravated murder conviction.[7]

---

[7] Even with the "resumming" decision, petitioner's total prison term of 356 months remains shorter than the minimum 400-month term that the board believed petitioner would serve when it "unsummed" the matrix ranges on his robbery and kidnapping convictions in 2000.

In arguing to the contrary, petitioner cites *State v. Macy,* 320 Or 408, 412, 886 P2d 1010 (1994), in which the Supreme Court stated that "there presently is no mechanism in place for the [board] to 'resum' the ranges of terms of imprisonment" that it had previously unsummed. Based on that statement and the lack of explicit statutory reference to "resumming," petitioner concludes that the board "does not have authority to re-sum a term of imprisonment once it has unsummed that term."

Petitioner reads too much into *Macy.* In that case, the defendant had been convicted of two counts of murder and had originally received concurrent life sentences with a 25-year minimum term. *Id.* at 410. An appeal resulted in remand to the trial court for resentencing; the court then entered a judgment imposing two consecutive life sentences. *Id.* On appeal from that judgment, the defendant argued to the Supreme Court that the consecutive life sentences were unlawful. "The error, according to [the] defendant, [was] that the consecutive sentences [were] impermissibly more severe than his original, concurrent sentences." *Id.* at 411.

The Supreme Court did not reach the merits of that argument because intervening action by the parole board rendered the issue moot. It turned out that the board had "'unsummed' the consecutive ranges for [the] defendant's life sentences for murder and treated the matrix ranges for the two sentences as if they were concurrent." *Id.* Because the effect of the board's action was to give the defendant the same prison term he would receive if he prevailed in arguing that he should have received only concurrent sentences, the court concluded that the appeal was moot. *Id.* at 412-13.

The court went on to explain that the possibility that the board would "resum" the defendant's prison terms in the future was not enough to keep the case from being moot. The court first observed, in the passage that petitioner relies on in this case, that there was "no mechanism in place for the [board] to 'resum'" the defendant's prison terms. *Id.* at 412. The court went on, however, to address the defendant's argument that the board might promulgate a rule that did give itself "re-summing" authority. Citing other cases in which courts held that speculation about possible

*future* actions could keep a case from becoming moot, the court declined "to decide [the] case on the mere possibility" that the board could and would "assume that authority and then * * * exercise it." *Id.* at 413.

In our view, *Macy* does not stand for the proposition that the board lacks authority to "resum" prison terms that it previously has "unsummed." Rather, the court's statement that "no mechanism" existed for resumming was simply an observation that no parole-board rule specifically described such a process. But *Macy* does not hold that the board could not adopt such a process and it says nothing about the board's general authority to reconsider its final orders.

To recap: we conclude that the board did not err when it "resummed" the prison terms on petitioner's robbery and kidnapping convictions that it previously had "unsummed" in 2000, at a time when the board mistakenly believed that petitioner would serve a prison term of at least 360 months on his conviction for aggravated murder. We emphasize the narrowness of our holding, which is only that the board had authority to revisit a determination it had previously made at a time when it was operating under a mistaken view of the relevant law. The board expressed a broader view of its authority in the ARR, suggesting that *Janowski/Fleming* either required or authorized the board to conduct "a de novo hearing to establish a prison term" for a person who had been sentenced for aggravated murder under ORS 163.105 (1985). As explained above, petitioner's challenge to that broad ruling is not properly before us and we express no opinion on it.

Affirmed.