ELIZABETH A. WOLFORD, United States District Judge *363 INTRODUCTION
Represented by counsel, Plaintiff Jennifer Marie Nelson ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted, the Commissioner's motion (Dkt. 14) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed her application for DIB on December 16, 2013. (Dkt. 7 at 23, 61).[2] Plaintiff alleged disability beginning August 27, 2010, due to dizziness, depression, anxiety, panic attacks, elbow joint pain, lower back pain, headaches lasting three to four weeks, obesity, "eye/facial muscle tiredness/not able to stay awake", and pain in her feet and ankles. (Id. at 23, 62). Plaintiff's application was initially denied on March 25, 2014. (Id. at 23, 68-73). At Plaintiff's request, a hearing was held in Rochester, New York, before administrative law judge ("ALJ") Marie D. Greener on May 13, 2016. (Id. at 23, 39-60). On August 9, 2016, the ALJ issued an unfavorable decision. (Id. at 20-34). Plaintiff requested Appeals Council review; her request was denied on June 15, 2017, making the ALJ's written determination the Commissioner's final decision. (Id. at 5-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing *364 Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 404.1520(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2013. (Dkt. 7 at 25). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity during the period from her alleged onset date of August 27, 2010, through her date last insured of December 31, 2013. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of: obesity, foot problems (callouses and plantar fasciitis ), depression, and anxiety. (Id. ). With respect to Plaintiff's representations that she suffered from numbness and tingling in her right hand, as well as left knee pain, the ALJ concluded that these were not medically determinable impairments. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically *365 equaled the severity of any Listing. (Id. at 26). The ALJ particularly considered the criteria of Listings 1.02, 12.04, and 12.06, in reaching her conclusion. (Id. at 26-27).
Before proceeding to step four, the ALJ determined that Plaintiff, through the date last insured, retained the RFC:
to lift and carry up to 10 pounds occasionally, and less than 10 pounds frequently; sit 6 hours in an eight-hour workday, stand or walk a total of 2 hours in an eight-hour workday. In addition[,] she requires routine daily tasks which do not significantly change in pace or location on a daily basis. She also requires an occupation which does not require her to talk to the public on the telephone or in person.
(Id. at 27-28). At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work. (Id. at 33).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer, addresser, and stem mounter. (Id. at 33-34). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from August 27, 2010, the alleged onset date, through December 31, 2013, Plaintiff's date last insured. (Id. at 34).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse or, in the alternative, remand the Commissioner's decision, arguing that: (1) the ALJ improperly evaluated and rejected opinion evidence in the record, resulting in an RFC finding that is not supported by substantial evidence; (2) the ALJ failed to develop the record by obtaining evidence relating to Plaintiff's impairments and limitations existing prior to her date last insured; and (3) the ALJ failed to properly evaluate Plaintiff's credibility. (Dkt. 11-1 at 18-30). For the reasons set forth below, the Court finds that the ALJ erred in failing to obtain any opinion evidence from an acceptable medical source relevant to the period of disability at issue, and assessed Plaintiff's RFC based on her own lay interpretation of the medical record. This error necessitates remand for further administrative proceedings.
A. The RFC Finding is Unsupported by Substantial Evidence
Plaintiff argues that the ALJ improperly substituted her own opinion over medical opinions in the record from Dr. Prakash Reddy, Dr. Elizabeth Naumburg,[3] and social worker Beverly J. Dodd, and then failed to further develop the record by obtaining opinion evidence relating to Plaintiff's functional limitations from the period of disability at issue. (Id. at 18-27). Defendant argues in response that the ALJ reasonably assessed the medical records and opinions in the record. (Dkt. 14-1 at 13). Defendant further contends that Plaintiff's argument that the ALJ did not develop the record "attempts to shift the burden to the agency to show that she is not disabled," and "a lack of evidence showing the existence of a functional limitation constitutes substantial evidence that *366 such a limitation does not exist." (Id. at 16).
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 20030, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). In this case, for the reasons set forth below, the Court finds that the ALJ failed to appropriately consider the medical opinions of record and that the ALJ's assessment of Plaintiff's RFC was not supported by competent medical opinion.
1. Ms. Dodd's Opinion
The written determination contains a discussion of the opinion evidence in the record, including: (1) the July 15, 2015 opinion of Beverly J. Dodd, LCSW-R, Plaintiff's primary therapist; (2) the March 6, 2016 opinion of Christine Ransom, Ph.D., a consultative physician; and (3) the March 24, 2014 opinion of Thomas Harding, an Administration medical review psychologist. (Dkt. 7 at 26, 31). On July 13, 2015, Ms. Dodd issued an opinion letter relating to Plaintiff's limitations. (Id. at 663). In the letter, Ms. Dodd explained that Plaintiff had been a client since January 2013, and was treated for symptoms of general anxiety disorder, panic disorder, and depressive disorder. (Id. ). Ms. Dodd then opined:
Although she consistently attends both therapy and psychiatric appointments and is being prescribed medication, [Plaintiff's] symptoms often adversely affect her everyday functioning. It is difficult for her to concentrate on everyday activities or deal with stressors, which results in high anxiety and depression. In my clinical assessment, [Plaintiff] would not be able to function in the workplace at this time.
(Id. ). Thereafter, on May 11, 2016, Ms. Dodd issued a second opinion letter. (Id. at 661). In the May 2016 letter, Ms. Dodd referred to the limitations contained in her July 13, 2015 letter, and clarified that "[i]n addition, it is my opinion that these limitations and [Plaintiff's] inability to function in the workplace existed prior to December 31, 2013. If you have additional questions, please do not hesitate to contact me." (Id. ).
Dr. Ransom, a consultative examiner, examined Plaintiff on March 8, 2016. (Id. at 554). Dr. Ransom noted that Plaintiff received treatment at Rochester Rehabilitation Center since 2011. (Id. ). Regarding her current functioning, Plaintiff reported that medication is somewhat effective, but she "continues to feel that she easily becomes *367 upset and overwhelmed emotionally. Her energy level fluctuates. She has difficulty concentrating at times." (Id. at 554-55). A mental status exam was mostly normal. (Id. at 555-56). Dr. Ransom opined that Plaintiff:
will have mild difficulty following and understanding simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks, performing complex tasks, relating adequately with others and appropriately dealing with stress. The results of the evaluation appear to be consistent with mild psychiatric conditions, which will not significantly interfere with the claimant's ability to function on a daily basis.
(Id. at 556). Dr. Harding, one of the Administration's medical review psychologists, found that there was insufficient evidence to adjudicate Plaintiff's claim. (See id. at 65 (Plaintiff's "[a]llegations are partially credible but there exists not enough medical data to substantiate a determination as to severity, frequency or intensity") ). The ALJ noted that other medical evidence received after the date of Dr. Harding's review of the evidence was sufficient to determine that Plaintiff had severe mental impairments prior to her date last insured. (Id. at 26).
The ALJ weighed the opinions of Ms. Dodd and Dr. Ransom in assessing Plaintiff's claim. Regarding Ms. Dodd's opinion that Plaintiff was disabled, the ALJ assigned it no evidentiary weight "because that fact is one for determination by the Commissioner." (Id. at 26). The ALJ considered Ms. Dodd's opinion relating to Plaintiff's limitations for concentration and dealing with stressors only at step two of the disability analysis (i.e. , to assess that Plaintiff's mental impairments were severe), because Ms. Dodd allegedly did not indicate that Plaintiff's limitations were present prior to January 1, 2014, during the relevant period of disability. (See id. at 26 ("Also, while the symptoms were said to cause problems with concentration and dealing with stressors, Ms. Dodd did not indicate if that limited effect was present prior to January 1, 2014") ). Similarly, in weighing the opinion of Dr. Ransom, the ALJ noted that Plaintiff described her symptoms to Dr. Ransom "as they affected her in 2016, at the time of the interview." (Id. at 31-32). Because Dr. Ransom indicated that Plaintiff's limitations were present as of March 8, 2016 (the date of the examination), the ALJ assigned her opinion no evidentiary weight, because it did not relate to the period before December 31, 2013. (Id. at 32).
The ALJ's statement that Ms. Dodd did not indicate that Plaintiff's limitations were present prior to January 1, 2014, is inaccurate. As noted above, on May 11, 2016, two days before the hearing and almost three months prior to the issuance of the written determination, Ms. Dodd reaffirmed her opinion that Plaintiff was precluded from work and clarified that Plaintiff's "limitations and [Plaintiff's] inability to function in the workplace existed prior to December 31, 2013." (Id. at 661). The ALJ failed to address Ms. Dodd's opinion that Plaintiff's disabling limitations existed prior to her date last insured, despite the fact that this opinion was submitted well in advance of the written determination.[4] The Court is cognizant *368 that a therapist is not an acceptable medical source, and therefore their opinions are not entitled to controlling weight. See Thomas v. Berryhill , No. 16-CV-6244L, 337 F.Supp.3d 235, 240, 2018 WL 4725308, at *3, 2018 U.S. Dist. LEXIS 170267, at *7-8 (W.D.N.Y. Oct. 2, 2018). However, opinions of "other sources," such as therapists, "are important and should be evaluated on key issues such as impairment severity and functional effects." Id. at 240, 2018 WL 4725308, at *3, 2018 U.S. Dist. LEXIS 170267, at *7 (internal quotations and citation omitted). Given the lack of opinion evidence in the record relating to Plaintiff's functional limitations during the relevant period of disability, the ALJ should have considered Ms. Dodd's opinion that Plaintiff's impairments in concentrating and dealing with stress existed prior to December 31, 2013. The fact that Plaintiff possessed these limitations is underscored by the opinion of Dr. Ransom, who also found that Plaintiff had mild limitations in maintaining attention and concentration for simple tasks and appropriately dealing with stress (id. at 556), as well as other medical evidence in the record, showing that Plaintiff began struggling with mental health issues beginning in 2010 (see id. at 28), and received treatment for these issues beginning in 2011 (id. at 29).[5] On remand, the ALJ should consider Ms. Dodd's opinion that Plaintiff's limitations existed prior to December 31, 2013, or explain her reasoning as to why Ms. Dodd's May 2016 opinion is not consistent with other medical evidence in the record.
2. RFC Assessment
In assessing Plaintiff's RFC, the ALJ acknowledged in the written determination that "[t]he record does not contain any statement of the claimant's physical and mental function-by-function limitation from any treating source issued prior to January 1[,] 2014." (Id. at 32). She then explained how she assessed Plaintiff's RFC:
I have limited the claimant to performing low stress and simple work requiring no more than sedentary exertion. In doing so, I have given evidentiary weight to the claimant's statement regarding what she has remained able to do and have recognized that her obesity has most likely limited her to sedentary work. The limitation concentrating noted by the therapist in 2016, likely was present (although undocumented) during the period prior to the date last insured. I have given the claimant the benefit of the doubt in limiting the claimant in the mental work tasks identified.
(Id. at 32-33). This explanation is insufficient to explain the basis for the ALJ's RFC finding. As acknowledged by the ALJ, the record is devoid of opinion evidence as to Plaintiff's functional limitations, and it is not clear what evidence in the record informed the RFC assessment, other than the ALJ's general statement that she relied on "what [Plaintiff] has been able to do," and "likely" limitations *369 due to her obesity. Although the written determination contains a description of Plaintiff's daily activities, the ALJ is not a medical expert, and is not permitted to translate these activities into functional limitations. See Judd v. Berryhill , 17-CV-1188, 2018 WL 6321391, at *7, 2018 U.S. Dist LEXIS 205177, at *23 (W.D.N.Y. Dec. 4, 2018) ("It is unclear to the Court how the ALJ, who is not a medical professional, determined the RFC without a medical source statement or consultative examination report to assist her in correlating the medical treatment notes into an assessment of Plaintiff's physical capacity for work-related activities. The decision demonstrates the ALJ's reliance upon her own lay opinion to determine Plaintiff's RFC, an error requiring remand"). The Court is cognizant that the record appears to lack evidence of Plaintiff's functional limitations relevant to the period of disability. However, the ALJ's resolving that issue by fashioning an RFC without any evidence relating to Plaintiff's functional limitations was error. On remand, the ALJ should consider the opinion of Ms. Dodd, and/or more fully explain what evidence informed the assessed RFC.
B. Plaintiff's Remaining Argument
As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23, 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Plaintiff's memorandum of law refers to a "Dr. Baumburg." (See Dkt. 11-1 at 25). However, there are no records in this case from any Dr. Baumburg. Instead, it appears that Plaintiff is referring to findings by her primary care physician, Dr. Naumburg. (See Dkt. 7 at 606-54).

Defendant contends that the ALJ considered and adopted Ms. Dodd's May 2016 opinion letter, referring to the portion of the written determination that states, "[t]he limitation concentrating noted by the therapist in 2016, likely was present (although undocumented) during the period prior to the date last insured. I have given the claimant the benefit of the doubt in limiting the claimant in the mental work tasks identified." (See Dkt. 14-1 at 15). This one-sentence statement is insufficient, as it does not contain a discussion of Ms. Dodd's opinion, including her opinion relating to Plaintiff's difficulty dealing with stressors or her opinion that Plaintiff is unable to work. In other words, the ALJ failed to meaningfully consider the May 2016 opinion letter.

The Court further notes that Dr. Reddy, a psychiatrist at Rochester Rehabilitation, assessed Plaintiff with a GAF of 50 (indicating serious symptoms) in January 2014. (Dkt. 7 at 388). Although this assessment was conducted narrowly outside the period of disability, it lends credence to Ms. Dodd's opinion that Plaintiff's impairments existed prior to December 31, 2013.